1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

John Houston Scott, SBN 72578
**SCOTT LAW FIRM**
1388 Sutter Street, Suite 715
San Francisco, California 94109
Telephone: (415) 561-9601
Facsimile:  (415) 561-9609
john@scottlawfirm.net

Attorney for the Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANN MARIE BORGES and CHRIS GURR, individually and doing business as GOOSE HEAD VALLEY FARMS,<br><br>        Plaintiffs,<br><br>    v.<br><br>COUNTY OF MENDOCINO, SUE ANZILOTTI and Does 1 – 25 inclusive,<br><br>        Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**[42 U.S.C. § 1983]**<br><br>*JURY TRIAL demand* |

Plaintiffs Ann Marie Borges and Chris Gurr, dba Goose Head Valley Farms, allege as follows:

### JURISDICTION & VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1983 and the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343.

2.      The claims alleged herein arose in the County of Mendocino in the State of California. Venue for this action lies in the United States District Court for the Northern District of California under 28 U.S.C. §1391(b)(2).

### PARTIES

3.      Plaintiffs Ann Marie Borges and Chris Gurr (hereinafter "Plaintiffs") are residents of Mendocino County, California.  In August 2016 they purchased property in Ukiah, California zoned AG40.  In 2017 they formed a business entity, Goose Head Valley Farms, for the purpose of growing medical cannabis at their 11 acres farm located at 1181 Boonville Road, Ukiah, California.

4.      Defendant County of Mendocino is a public entity situated in the State of California and organized under the laws of the State of California.  The County of Mendocino created a cannabis program that went into effect in the spring of 2017.  The program was supervised and managed by the Commissioner of the Department of Agriculture for the County of Mendocino. At that time Diane Curry was the Interim Commissioner of the Department of Agriculture.

5.      Defendant Sue Anzilotti is sued in her individual capacity as a private actor who conspired with state actors.  At all times mentioned herein she was a neighbor of the Plaintiffs residing at 1551 Boonville Road, Ukiah, California.  Defendant Anzilotti cooperated and conspired with County officials and County employees, acting under color of state law, to deprive the Plaintiffs of certain constitutional rights.

6.      The true names and capacities, whether individual, corporate, associate or otherwise,

- 1 -
COMPLAINT FOR DAMAGES

of Defendants named here as Does 1 -25 are unknown to the Plaintiffs, who therefore sue said Defendants by such fictitious name.  Doe Defendants were responsible in some manner for the injuries and damages alleged herein.  Plaintiff is informed and believes and thereupon alleges upon information and belief that each of them is responsible, in some manner, for the injuries and damages alleged herein.

### STATEMENT OF FACTS

7.      Plaintiff Ann Marie Borges is 62 years old.  She grew up in Mendocino County and still has family in Willits, just north of Ukiah.  She attended high school and college in Georgia before returning to California.  She went on to have a 30 years career as a real estate agent for Caldwell Banker and other companies.  She is also a professional horse trainer.

8.      Plaintiff Chris Gurr is 63 years old. He grew up in Georgia and met Ann Marie Borges when they attended high school in Georgia.  He had a 30 years career in Atlanta, Georgia as a business owner and franchise owner.  He was primarily involved in the sales of IT Solutions and Services.

9.      They reconnected at their 40th high school reunion and have been a couple ever since.  Chris Gurr relocated to Mendocino County in May 2016.  They decided to partner in a business venture to become licensed to cultivate medical cannabis on a suitable farm in Mendocino County near Ukiah and outside the City limits.  The business entity came to be known as Goose Head Valley Farms.

10.      Plaintiffs thoroughly reviewed the Mendocino County guidelines for the existing Cannabis Program and reached out to the Department of Agriculture.  Plaintiffs also attended numerous meetings featuring County and State agency representatives.  This information helped guide the plaintiffs to the eleven (11) acres farm they purchased in August 2016 down a private road off Boonville Road.  It was ideal because it was zoned AG40 with an excellent well listed on County records.  It also was level land without erosion issues and had proper sun without having to remove trees.

COMPLAINT FOR DAMAGES

11.     While in escrow the plaintiffs hired Bob Franzen of Redwood Water System to perform a well test.  They learned the water well produced 22 GPM and was dug 30 feet deep.  The plaintiffs also consulted with three licensed cannabis farmers who visited the site.

12.     On May 1, 2017 plaintiffs completed their application to cultivate medical cannabis.  See Exhibit A attached.  On May 4, 2017 – while accompanied by an attorney – plaintiffs met with Commissioner Diane Curry and Christina Pallman of her staff.  They learned their application was approved based on the information contained in the application, documents provided, and proof of prior cultivation experience.

13.     Plaintiffs were given an "Application Receipt" signed by Commissioner Curry dated May 4, 2017.  See Exhibit B attached.   It provides, in part, that; "The garden at this site is considered to be in compliance, or working toward compliance, until such time as a permit is issued or denied."  On June 19, 2017, the plaintiffs met with Commissioner Curry to complete an "extinguish and transfer" worksheet related to prior cultivation by Ann Marie Borges at a coastal location in the County.

14.     Beginning on or about June 20, 2017 Defendant Sue Anzilotti contacted Steve White of the California Department of Fish and Wildlife (CDFW) on behalf of "concerned homeowners" who lived adjacent to Plaintiffs' property.  She made false allegations that the water source for Plaintiffs' approved cultivation site was not approved for use in commercial cultivation operations.

15.     On June 28, 2017 a public meeting was held by the Board of Supervisors for the County of Mendocino.  An issue in debate involved a dispute with a cannabis cultivator with a coastal permit. An issue arose as to whether there were environmental issues unique to the coast that should exclude permits to cultivate cannabis on the coast and exclude applicants for permits who relied upon prior coastal cultivation experience to qualify under paragraph (B)(3) of the Ordinance.  Supervisor John McCune was the leading advocate to have the Ordinance so amended and it was – potentially disqualifying the Plaintiffs as applicants.

COMPLAINT FOR DAMAGES

16.     During July 2017 Commissioner Curry contacted CDFW agents and requested an opportunity to meet with them on Plaintiffs' property in order to better understand the requirements relating to creeks located near cannabis farms.  On July 25, 2017 two CDFW employees came to the property unannounced, and without prior notice, after cancelling appointments scheduled through Commissioner Curry.  Without performing any tests, they concluded it was likely water was being diverted from the creek and sent a letter to Commissioner Curry stating that they suspected water diversion. At that time the Plaintiffs offered to turn off the well and purchase water for irrigation while this issue was further investigated.  Plaintiffs were told to wait for CDFW to contact them.

17.     On or about July 26, 2017 Plaintiffs hired a hydrologist, Donald G. McEdwards,  to take samples from the well and the creek in order to perform an extensive hydrology study.  The samples were provided to Alpha Labs in Ukiah.  Plaintiffs were advised the results would be available on or about August 10, 2017.

18.     On August 10, 2017 at approximately 10:30 a.m. a convoy of CDFW vehicles arrived at Plaintiffs' property and agents with guns pointed immediately placed the Plaintiffs in handcuffs.  Plaintiffs informed Steve White, the CDFW team leader, they had an application receipt from the County and were in full compliance with all County regulations.  They also informed him that they were awaiting a report from Alpha Labs for tests of the creek water and the well water.  The CDFW team claimed they believed the water was being diverted from the creek and proceeded to cutdown and eradicate the plants, i.e., 100 plants growing indoors under a hoop and 171 plants growing outdoors in an approved location of 10,000 square feet.  The garden was within County guidelines and took up approximately one quarter acre on the 11 acres farm.

19.     On or about August 13, 2017 Plaintiffs received the results of the water tests.  See Exhibit C attached.  After a careful analysis of water samples from the creek and the well it was determined that; "Of the sixteen constituent values compared, twelve are greater in the well sample than in the creek sample.  This means that the water in the well is distinct from the water

- 4 -
COMPLAINT FOR DAMAGES

in the creek.  Of particular note is the presence of iron and manganese in the well sample and their absence in the creek sample."

20.     Because of a recent change to the Ordinance that impacted cultivation of cannabis at coastal zones of the County, on or about August 14, 2017 Plaintiff Ann Marie Borges met with Commissioner Curry and provided proof or prior cultivation from the town of Willits in the County, an area not included in the coastal zone.

21.     On or about September 16, 2017 Plaintiffs were contacted by Commissioner Curry and notified their amended application had been approved.  On September 19, 2017 the Plaintiffs went to Commissioner Curry's office to pick up the permit.  The anticipated handoff was prevented by Deputy County Counsel Matthew Kiedrowski.  He informed the Plaintiffs that they needed to provide additional proof that the site of prior cultivation in Willits was no longer able to resume cannabis cultivation.

22.     Plaintiffs hired a local land use attorney, Tina Wallis, to resolve this remaining issue. On or about October 31, 2017 Tina Wallis, on behalf of the Plaintiffs, submitted to Matthew Kiedrowski a signed Agreement Not to Resume Cannabis Cultivation at the prior cultivation site in Willits.  See Exhibit D attached.  It was anticipated the permit would then be delivered.

23.     On November 22, 2017 Plaintiff Chris Gurr made a formal complaint against Sue Anzilotti to the Enforcement Division of the Fair Political Practices Commission.  See Exhibit E attached.  The allegations centered on Sue Anzilotti's use of her position as an unsworn administrator with the Sheriff's Office to obtain access of private information, including illegal background checks, and misuse of her government position to conduct personal business to influence decisions by County officials and employees that would personally benefit her.

24.     After completing and submitting CalCannabis applications, on January 23, 2018 the Plaintiffs received a Temporary Cannabis Cultivation License from the California Department of Food and Agriculture.   See Exhibit F attached.  This was issued following a close examination and inspection of the Plaintiffs' property and water supply by the CDFW, the State Water

- 5 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Resources Control Board, and the State Department of Food and Agriculture.

25.    On or about March 2018 Diane Curry left her position as Interim Commissioner of the Department of Agriculture.

26.    On July 9, 2018 the County of Mendocino, Department of Agriculture mailed a letter to the Plaintiffs notifying them that their application to cultivate medical cannabis had been denied because they did not provide evidence of prior and current cultivation on the same parcel as required by paragraph (B)(1) of the local Ordinance/10A.17.080.  See Exhibit G attached.  This denial was based on a false and fraudulent premise.

27.    The Plaintiffs never applied for a medical cannabis cultivation permit pursuant to paragraph (B)(1) of the County Ordinance.  Rather, Plaintiffs' application was submitted pursuant to paragraph (B)(3) of the Ordinance which expressly allowed for permits to be issued based on "relocation."  It provides that; "Persons able to show proof of prior cultivation pursuant to paragraph (B)(1) above may apply for a Permit not on the site previously cultivated (the 'origin site') but on a different legal parcel (the 'destination site') subject to the following requirements…".  The Plaintiffs met all of the (B)(3) requirements as was determined by Commissioner Curry in September 2017.

28.    The Plaintiffs are the only AG40 applicants for a permit to cultivate medical cannabis in the County of Mendocino who complied with all (B)(3) requirements but were denied a permit by the County of Mendocino.

### ADDITIONAL FACTS RE CONSPIRACY CLAIM

29.    Defendant Sue Anzilotti was politically connected to at least two members of the Mendocino County Board of Supervisors, John McCowen and Carre Brown.  When Sue Anzilotti began to complain publicly against the Plaintiffs to various state and local agencies she also complained privately to many officials - including John McCowen and Carre Brown.

30.    Co-conspirator John McCowen played a leading and influential role among a majority of the Board of Supervisors.  With that apparent authority he formed a special relationship with

- 6 -

1
2
3
4

Deputy County Counsel Matthew Kiedrowski, another co-conspirator.  Matthew Kiedrowski was assigned by County Counsel Kit Elliot to oversee the Cannabis Program that was under the jurisdiction of the Commissioner of the Department of Agriculture.  Diane Curry was the Interim Commissioner from as early as 2016 until she retired in March 2018.

5
6
7
8
9

31.     Sometime after the Plaintiffs submitted their application in May 2017 Commissioner Curry was informed by Matthew Kiedrowski that John McCowen would never allow the Plaintiffs' project to be approved.  He also mentioned a loophole John McCowen found in the ordinance to prevent (B)(3) applicants, such as the Plaintiffs,  from obtaining permits if their prior cultivation experience was "coastal."

10
11
12
13

32.     After the Plaintiffs amended their application to include an inland site in Willits to satisfy the prior cultivation requirement, Commissioner Curry decided to issue the permit and informed the Plaintiffs of this decision.  However, co-conspirator Matthew Kiedrowski intervened and prevented the temporary permit from being delivered.  He created another hurdle.

14
15
16
17
18
19

33.     The Plaintiffs hired an attorney and the requested "Agreement Not to Resume Cannabis Cultivation" was provided to Matthew Kiedrowski.  See Exhibit D attached. Nevertheless, the approved temporary permit was now being held hostage, under color of state law, by Matthew Kiedrowski in furtherance of the conspiracy between Sue Anzilotti, John McCowen and Matthew Kiedrowski.  In addition, co-conspirators McCowen and Kiedrowski were acting as de facto final decision makers for the County of Mendocino.

20
21
22

34.     In March 2018 Diane Curry retired from her position as Interim Commissioner of the Department of Agriculture.  This is not the only case where members of the Board of Supervisors attempted to influence her through Deputy County Counsel Matthew Kiedrowski.

23
24
25
26

35.      Diane Curry was replaced by Harinder Grewal.  Commissioner Grewal signed a letter prepared by Matthew Kiedrowski dated July 9, 2018. The letter was sent by the County of Mendocino on or about that date officially notifying the Plaintiffs their application was denied

27
28

- 7 -

and the reason for the denial.  See Exhibit G attached.  The manufactured reason for the denial is both false and pretextual.

### STATEMENT OF DAMAGES

36.     As a result of the acts and/or omissions alleged herein, Plaintiffs Ann Marie Borges and Chris Gurr dba Goose Head Valley Farm suffered, and continue to suffer, economic damages to their business and property. In addition, Plaintiffs suffered and continue to suffer general damages, including emotional distress, in an amount to be determined according to proof.

37.     As a result of the acts and/or omissions alleged herein, Plaintiffs Ann Marie Borges and Chris Gurr dba Goose Head Valley Farm suffered past and future lost earnings and lost earning capacity in an amount to be determined according to proof.

38.     The acts and omissions of Sue Anzilotti were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of Plaintiffs. Plaintiffs therefore pray for an award of punitive and exemplary damages in an amount according to proof.

39.     Plaintiffs have retained private counsel to represent them in this matter and are entitled to an award of attorneys' fees and costs.

### CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**[42 U.S.C. §1983 – CLASS OF ONE/EQUAL PROTECTION – COUNTY OF MENDOCINO ONLY]**

40.     Plaintiffs incorporate herein by reference the proceeding paragraphs of this complaint as though fully set forth herein.

41.     The County of Mendocino denied the Plaintiffs' application for a temporary permit to cultivate medical cannabis for irrational and arbitrary reasons in violation of the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs are the only AG40 applicants denied a temporary permit who met the necessary requirements under category (B)(3) of the Ordinance and were approved by Diane Curry acting as the Interim Commissioner of the Department of Agriculture.

COMPLAINT FOR DAMAGES

42.     Alternatively, Plaintiffs were treated as a class of one because of the ill will and malice of final decision makers for the County of Mendocino.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### SECOND CAUSE OF ACTION
#### [42 U.S.C. §1983 – CLASS OF ONE/EQUAL PROTECTION – CONSPIRACY BETWEEN THE COUNTY OF MENDOCINO AND SUE ANZILOTTI]

43.     Plaintiffs incorporate herein by reference the proceeding paragraphs.

44.     Defendant Sue Anzilotti, a private actor, conspired with John McCowen, a state actor, to achieve a common goal, i.e., prevent the Plaintiffs from becoming licensed by the County of Mendocino to grow medical cannabis at the farm they had recently purchased.  The 11 acres farm is zoned AG40 for agriculture and was a near perfect site for cannabis cultivation in rural Mendocino County.

45.     Supervisor John McCowen, as Chairman of the Board of Supervisors, then enlisted Deputy County Counsel Matthew Kiedrowski to join the conspiracy. In furtherance of the conspiracy Matthew Kiedrowski obstructed and prevented the Plaintiffs from receiving the temporary permit approved by Commissioner Curry in September 2017.

46.     After Commissioner Curry retired in March 2018, and in furtherance of the conspiracy, Matthew Kiedrowski influenced Commissioner Grewal to sign a letter dated July 9, 2018 notifying the Plaintiffs that their application was denied.  The reason given for the denial is transparently false and fraudulent.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
#### [42 U.S.C. §1983 – SUBSTANTIVE DUE PROCESS – COUNTY OF MENDOCINO ONLY]

47.     Plaintiffs incorporate herein by reference the proceeding paragraphs of this complaint as though fully set forth herein.

48.     Plaintiffs have a property interest in the right to farm their property zoned AG40.

49.     The County of Mendocino has the authority to regulate agricultural activities in the County limited, in part, by the laws and Constitution of the United States.

50.     The County of Mendocino arbitrarily and capriciously and for no legitimate reason denied Plaintiffs a temporary permit to cultivate medical cannabis in violation of the Due Process Clause of the Fourteenth Amendment.  The decision to deny the permit was made by one or more final decision makers for the County of Mendocino.

51.     Alternatively, the decision to deny the temporary permit to cultivate medical cannabis shocks the conscience and/or was done with a purpose to harm or in deliberate indifference to the Plaintiffs' rights.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**[42 U.S.C. §1983 – SUBSTANTIVE DUE PROCESS – CONSPIRACY BETWEEN**
**THE COUNTY OF MENDOCINO AND SUE ANZILOTTI]**

52.     Plaintiffs incorporate herein by reference the proceeding paragraphs as though fully set forth herein.

53.     Defendant Sue Anzilotti, a private actor, conspired with John McCowen, a state actor, to achieve a common goal, i.e., prevent the Plaintiffs from becoming licensed by the County of Mendocino to grow medical cannabis at the farm they had recently purchased.  The 11 acres farm is zoned AG40 for agriculture and was a near perfect site for cannabis cultivation in rural Mendocino County.

54.     Supervisor John McCowen, as Chairman of the Board of Supervisors, then enlisted Deputy County Counsel Matthew Kiedrowski to join the conspiracy. In furtherance of the conspiracy Matthew Kiedrowski obstructed and prevented the Plaintiffs from receiving the temporary permit approved by Commissioner Curry in September 2017.

55.     After Commissioner Curry retired in March 2018, and in furtherance of the conspiracy, Matthew Kiedrowski influenced Commissioner Grewal to sign a letter dated July 9,

COMPLAINT FOR DAMAGES

2018 notifying the Plaintiffs that their application was denied.  The reason given for the denial is transparently false and fraudulent.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth

### PRAYER FOR RELIEF

Plaintiffs pray for relief as follows:

1.    For compensatory and economic damages according to proof;

2.    For general damages according to proof;

3.    For an award of exemplary or punitive damages against Sue Anzilotti;

4.    For an award of attorneys' fees and costs as permitted by law; and

5.    For such other and further relief as the Court may deem necessary and appropriate.

### JURY TRIAL DEMANDED

Plaintiff hereby requests a jury trial on all issues so triable.

Dated:  July 8, 2020                                    **SCOTT LAW FIRM**

By: <u>/s/ John Houston Scott</u>
John Houston Scott
Attorney for Plaintiffs

- 11 -

COMPLAINT FOR DAMAGES

# Exhibit A



# COUNTY OF MENDOCINO
## DEPARTMENT OF AGRICULTURE

# MEDICAL CANNABIS CULTIVATION
## APPLICATION PACKET

REVISED: APRIL 17, 2017

# TABLE OF CONTENTS - MEDICAL CANNABIS CULTIVATION

☐ Application Checklist

☐ Cultivation Application

☐ Cultivation & Operations Plan

☐ Property Owner Consent Form

☐ Affidavit Sample

☐ Fingerprint Worksheet & DOJ LiveScan Form

☐ Site Plan Checklist & Sample

☐ Property Profile Sample (Planning & Building Services)

☐ Cultural Resources Brochure

☐ Medical Cannabis Cultivation Program Fee Schedule

☐ Cannabis Tax Information

☐ Mendocino County Medical Cannabis Cultivation Ordinance (10A.17)

☐ Mendocino County Medical Cannabis Cultivation Site (20.242)

☐ Registration for Patient/Primary Caregiver

☐ Helpful Resources

**DIANE CURRY**
Interim Agricultural
Commissioner

**COUNTY OF MENDOCINO**
**DEPARTMENT OF AGRICULTURE**

**CONTACT INFORMATION**
890 N Bush Street
Ukiah, California 95482
TELEPHONE: (707) 234-6830
FAX: (707) 463-0240
Email: agcomm@co.mendocino.ca.us
Web: www.co.mendocino.ca.us

**ARIF KEVER**
Assistant Agricultural
Commissioner
Assistant Sealer of Weights &
Measures

## MEDICAL CANNABIS CULTIVATION - REGULATION APPLICATION CHECKLIST

Payment of a <u>non-refundable deposit</u> to the Treasurer/Tax Collectors office is required before submitting an application.  This checklist should be used as a guide for applications involving outdoor, mixed light and indoor cultivation.  Please submit this checklist with the application. Applicable code sections

### EXCLUSIONS AND RESTRICTIONS:

- Applications are only being accepted for cultivation sites within zoning districts of the Inland Zoning Code. Currently applications for cultivation in the Coastal Zone are not being accepted.
- No more than two permits may be issued to a person or entity pursuant to section 10A.17.070 (D) of the Mendocino County Medical Cannabis Cultivation Ordinance

### APPLICATION:

- ❑ Mendocino County Department of Agriculture Application to Cultivate Medical Cannabis
- ❑ Copy of payment receipt from the Treasurer/Tax Collector's office
- ❑ Proof of prior cultivation (10A.17.080 (B)(1)) *(see below)*
- ❑ Site Plan of Entire Parcel including: *Refer to attached sample*
- ❑ Completed Cultivation and Operations Plan (refer to Medical Cannabis Cultivation and Operations Plan form) *(10A.17.090(F))*

### PROOF OF CULTIVATION:

- ❑ The key to demonstrating Proof of Cultivation is to be able to demonstrate the validity of the dates on the documents you provide. The documentation must show that you actually were cultivating, where you were cultivating on your parcel, and how large your cultivation area was at the time. This documentation can take many forms, but photographic imagery is one of the best. Submit documentation for all examples below that apply.
- ❑ Photographic documentation and map imagery of cultivation activities occurring prior to January 1, 2016.
- ❑ Photographic documentation and map imagery of cultivation activities that currently exist.
- ❑ Proof of participation in the County's 9.31 cultivation program.
- ❑ At least one additional document demonstrating cultivation activities prior to January 1, 2016, which may be used to substitute for photographic documentation or map imagery of cultivation activities prior to January 1, 2016

Suggestions for map imagery for our county include:

Google Earth:      Google Earth
Tera Server:        Tera Server
Digital Globe:      Digital Globe
Harris MapMart: MapMart

❑ Also consider providing other documents that can demonstrate your activities such as grading permits, water board documentation, reports from law enforcement, as applicable (10A.17.080(B)(1)).

## FOR INDOOR CULTIVATION FACILITIES (ATTACH IF APPLICABLE):

❑ Provide plan for compliance with all applicable building codes *(10A.17.090(S))*
❑ Identify the source of power *(10A.17.090(S))*
❑ Documentation that addresses the handling of waste discharge from the grow location or items including nutrients, spent growing media, un-used containers and other associated hardware, supplies and garbage *(10A.17.090(S))*

## OTHER PERMITS, LICENSES AND DOCUMENTS (ATTACH IF APPLICABLE):

❑ If the applicant is not the record title owner of the legal parcel, written consent with an original signature from the owner allowing the cultivation of medical cannabis on their property by the applicant *(10A.17.090(B))*.
❑ If applying as a non-profit or partnership, a copy of the articles of incorporation or statement listing members of the partnership *(10A.17.090(O))*.
❑ By way of written agreement(s), proof that the applicant is authorized by one or more medical marijuana dispensing collectives or processors to produce medical marijuana for the use of the members of said collective(s) or processor(s) *(10A.17.090(P))*.
❑ Board of Equalization Seller's Permit if direct sale is intended to qualified patients or primary caregivers *(10A.17.090(Q))*.
❑ Copy of the statement of water diversion, or other permit, license or registration filed with the California State Water Resources Control Board (SWRCB), Division of Water Rights *(10A.17.090(G))*.
❑ Projects that disturb one or more acres of soil or projects that disturb less than one acre but are part of a larger common plan of development that in total disturbs one or more acres are required to obtain coverage under the SWRCB General Permit for Discharges of Storm Water Associated with Construction Activity Construction General Permit Order 2009-0009-DWQ *(10A.17.090(W))*.
❑ Copy of Notice of Intent and Monitoring Self-Certification and any other documents filed with the North Coast Regional Water Quality Control Board (NCRWQCB) demonstrating enrollment in and compliance with (or proof of exemption from) Tier 1, 2, or 3, NCRWQCB Order No. 2015-0023, or any substantially equivalent rule that may be subsequently adopted by the County of Mendocino or other responsible agency *(10A.17.090(I))*.
❑ For non-exempt activities that involve construction and other work in the waters of the US, include a copy of a federal Clean Water Act (CWA) Section 404 permit obtained from the Army Corps of Engineers and a CWA Section 401 water quality certification from the NCRWQCB *(10A.17.090(V))*.
❑ If required, a Streambed Alteration Permit obtained from the Department of Fish and Wildlife *(10A.17.090(J))*.
❑ If the source of water is a well, a copy of the County well permit if available; applicant shall provide documentation showing the approximate date of installation *(10A.17.090(K))*.

❑ If water or sewer services to the cultivation site will be provided by a community provider, a will-serve letter from the provider indicating adequate capacity to serve the cultivation site *(10A.17.090(Y))*.

❑ The results of a "Cortese List" database search for sites known to be contaminated with hazardous materials, including sufficient information to demonstrate that cultivation is in compliance with any cleanup and/or abatement order that is established for the site *(10A.17.090(X))*.

❑ Clearance from CalFire related to compliance with requirements of Public Resources Code Section 4290 *(10A.17.090(U))*.

❑ A statement describing the proposed security measures (10A.17.090(N)).



County of Mendocino

DIANE CURRY
Interim Agricultural
Commissioner

ARIF KEVER
Assistant Agricultural
Commissioner
Assistant Sealer of Weights &
Measures

**COUNTY OF MENDOCINO**
**DEPARTMENT OF AGRICULTURE**

CONTACT INFORMATION
890 N Bush Street
Ukiah, California 95482
TELEPHONE: (707) 234-6830
FAX: (707) 463-0240
Email: agcomm@co.mendocino.ca.us
Web: www.co.mendocino.ca.us

## APPLICATION TO CULTIVATE MEDICAL CANNABIS
Please Make Checks Payable to: Mendocino County Tax Collector
Application Fees are Non-refundable

| | |
|---|---|
| **Date:** | May 1, 2017 |
| **Application Number: (Completed by Department)** | |
| **Name of Applicant:** | Chris Gurr<br>Ann Marie Borges |
| **Business Address:** | 1181 Boonville Rd<br>City: Ukiah   State: CA<br>Zip: 95482 |
| **Residential Address:** | 1181 Boonville Rd<br>City: Ukiah   State: CA<br>Zip: 95482 |
| **Phone:** | Home:     Cell: (404) 617-0303<br>(678) 575-3224 |
| **Email:** | gurr.chris@gmail.com<br>borges.ann@gmail.com |
| **California Driver's License or Identification Card Number:** | Chris Gurr Y4259856<br>Ann Marie Borges N8278667 |
| **APN(s) of Parcel:** | 18519212 |
| **Zoning Designation & Parcel Acreage:** | AG-40/11.1 Acres |
| **Cultivation Site Address:** | 1181 Boonville Rd<br>City: Ukiah   State: CA<br>Zip: 95482 |

Application to Cultivate Medical Cannabis
(Rev. 04/17/2017)

| Permit Type (Check): | ☐C ☐C-A ☐C-B ☐1 ☐1A ☐1B<br>☐2 ☐2A ☒2B ☐4-Nursery ☐4-Seed |
|---|---|

**Type C, C-A, and C-B permits** are all restricted to a 2,500 square foot growing area, where C designates outdoor, C-A designates indoor, and C-B uses mixed light.

**Type 1, 1-A, and 1-B permits** are all restricted to a 5,000 square foot growing area, where 1 designates outdoor, 1-A designates indoor, and 1-B uses mixed light. Minimum 5 acre parcel.

**Type 2, 2-A, and 2-B permits** are all restricted to a 10,000 square foot growing area, where 2 designates outdoor, 2-A designates indoor, and 2-B grows using mixed light. Min. 10 acre parcel.

**Type 4 permits** are designated for nurseries or seed nurseries and are restricted to a 22,000 square foot growing area. Minimum 10 acre parcel.

| | |
|---|---|
| **Total Square Footage of Plant Canopy Area:** | 10,000 |
| **Estimated Number of Plants:** | 100+ |

| | |
|---|---|
| **Driving Directions from Ukiah:** | From Hwy 101 go West on Hwy 253 one mile.<br><br>Turn left on Woody Glen Rd. Follow signs<br><br>for 1181 Boonville Rd. |

Do you currently have a Third Party Inspector you have been working with?

☐ Yes (If yes, provide information below)      ☒ No

| | |
|---|---|
| **Name:** | |
| **Company:** | |
| **Phone:** | |
| **Business Address:** | |

Application to Cultivate Medical Cannabis
(Rev. 04/17/2017)

Is a four-wheel drive vehicle necessary to get to this location?   ☐Yes   ☒No

Are there guard dogs on the property? ☐Yes ☒No

Is there a locked gate at the entrance of this location or on the main entrance road(s) used to access this location?   ☐Yes   ☒No

If yes, give name and phone number of contact person:

| Name: | |
|---|---|
| **Phone:** | |

Will any of the following equipment be used on the property (Check all that apply):

1. Generators or other equipment (excluding motor vehicles):   ☐Yes   ☒No
   - ☐ Diesel Engines – 50 hp or grater or multiple engines that total 90 hp or grater
   - ☐ Non-diesel engines – 250 hp or greater
   - ☐ Odor Control (Abatement) Devices
   - ☐ Drying Equipment with exhaust stacks
   - ☐ Gasoline fuel storage and/or dispensing equipment
   - ☐ Boiler/Water heating equipment individually or cumulatively grater then 500,000 btu/hr.
2. Will any of the following operations be performed on subject property? ☒Yes ☐No
   - ☒ Open outdoor storage, processing and/or missing of soil or soil amendments
   - ☐ Grading, large area soil disturbance or road construction/maintenance (NOA Review)
   - ☐ Process that may generate fumes, dust, smoke or strong odors
     (Includes: Manufacturing, processing, production, testing, dispensing facilities)
   - ☐ Open outdoor burning
   - ☐ Aggregate and/or wood processing activities

Each person applying for a permit and any other person who will be engaged in the cultivation of cannabis for medical use must be at least twenty-one (21) years of age (10A.17.090(c)).  Please attach proof of age of applicant and all employees to the application packet.

Acceptable proof of age includes:

- ✓ Driver's License
- ✓ State Identification Card
- ✓ Passport
- ✓ Birth Certificate
- ✓ Social Security number application form
- ✓ Naturalization/immigration record
- ✓ Military record
- ✓ School record (if birth is listed)
- ✓ Insurance policy (if birth is listed)
- ✓ Marriage certificate (if birth is listed)

Application to Cultivate Medical Cannabis
(Rev. 04/17/2017)

## AGREEMENT TO INSPECTION

I hereby authorize the Department of Agriculture, Department of Planning and Building Services, and/or other appropriate County employees or agents or their designees, including building and fire inspectors, and who may be accompanied by representatives of State agencies or local districts, to enter the property only during normal business hours for the purpose of examining the location to confirm compliance with the provisions of Mendocino County Code Chapter 10A.17 for the purposes of issuing the permit being requested, and the provisions that will be set forth in the permit that may be issued on the basis of this application.  I further agree to pay any fee for such inspections beyond the initial pre-site inspection by a combined inspection team.

Initial: _____

## CERTIFICATION

By signing this application you hereby certify:

1. I have read and understand Mendocino County Code Chapter 10A.17.
2. I have read and understand Mendocino County Code Chapter 20.242.
3.  All of the information provided in this application is true and correct.

| Printed Name of Applicant: | Chris Carr |
| --- | --- |
| Signature of Applicant: | |
| Date: | May 1, 2017 |

**DIANE CURRY**
Interim Agricultural Commissioner

**ARIF KEVER**
Assistant Agricultural
Commissioner
Assistant Sealer of Weights &
Measures



**COUNTY OF MENDOCINO**
DEPARTMENT OF AGRICULTURE

CONTACT INFORMATION
890 N Bush Street
Ukiah, California 95482
TELEPHONE: (707) 234-6830
FAX: (707) 463-0240
Email: agcomm@co.mendocino.ca.us
Web: www.co.mendocino.ca.us

## MEDICAL CANNABIS CULTIVATION AND OPERATIONS PLAN

| | |
|---|---|
| **Date:** | April 24, 2017 |
| **Applicant Name:** | Chris Gurr<br>Ann Marie Borges |
| **Cultivation Site Address** | 1181 Boonville Rd |
| | City: Ukiah   State: CA   Zip: 95482 |
| **Permit Type:** | 2-B |
| **Cultivation Area:** | 10,000 sq. ft. |
| **Zoning Designation:** | AG-40 |

***NOTE:** Applicants must either complete this questionnaire or self-generate a plan that shows your cultivation operation will meet the minimum legal standards for the following: water storage, conservation and use; drainage, runoff and erosion control; watershed and habitat protection, and proper storage of fertilizers, pesticides and other regulated products. The plan must also provide a description of soil/media importation and management, and a schedule of activities during each month of the growing and harvest season. If applicants choose to use this form and additional space is needed in any section, please reference and attach addition pages as necessary.*

**Please describe you are in your cultivation process, and what are your cultivation plans for the rest of the year?** *Please describe all cultivation activities with approximate dates.*

See attached 2017 Proposed Operations Calendar

| Operations Calendar | |
|---|---|
| *(NOTE: Use additional attached documents if more space is necessary)* | |
| **January** | |
| Activity | Approximate Date |
| No activity | All month |
| | |
| **February** | |
| Activity | Approximate Date |
| No activity | All month |
| | |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

| March | |
|---|---|
| Activity | Approximate Date |
| Source clones, order dirt/nutrients | All month |
| | |

| April | |
|---|---|
| Activity | Approximate Date |
| Prepare hoops for clones, mix dirt, pots filled, plant clones | All month |
| | |

| May | |
|---|---|
| Activity | Approximate Date |
| Prepare for trenching, soil mixing, plant outdoor garden | All month |
| depending upon the weather. | |

| June | |
|---|---|
| Activity | Approximate Date |
| Care for hoop & outdoor plants. Neem, provide nutrients. | All month |
| Train plants, clean up plants. | |

| July | |
|---|---|
| Activity | Approximate Date |
| Harvest hoop, hang plants in drying shed. Neem. | All month |
| Dry - breakdown from stock, manicure, cure, store. | |

| August | |
|---|---|
| Activity | Approximate Date |
| Clean up outdoor bottoms, tie out, continue leafing, add | All month |
| nutrients and Neem. | |

| September | |
|---|---|
| Activity | Approximate Date |
| Harvest and dry early strains, manicure, cure, store. | All month |
| Continue to care for outdoor as listed above. | |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

| October | |
|---|---|
| Activity | Approximate Date |
| Harvest strains as ready, dry in shed, breakdown, manicure, cure, store. | All month |
| November | |
| Activity | Approximate Date |
| Continue above. | All month |
| December | |
| Activity | Approximate Date |
| Vacation | |

## SEED AND CLONE STOCK

**List the source(s) of your seeds, cuttings, or tissue cultures.**

| |
|---|
| Artifact Nursery - Laytonville, CA |
| |
| |

**If you grow your own clones/start your own seed, describe the infrastructure of your clone room (i.e. type and size, supplemental lights, watering system):**     ☒ Not applicable

| |
|---|
| |
| |
| |

**How do you prevent seedling diseases and/or insect problems?**

| |
|---|
| By maintaining sanitary conditions and controlling the environment with Neem. |
| |
| |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

## SOIL AND CROP FERTILITY MANAGEMENT

### A. GENERAL INFORMATION:

**What are the major components of your soil and crop fertility plan?**

☐ crop rotation        ☐ cover crops        ☐ interplanting        ☐ crop residues

☐ mined minerals       ☒ compost            ☐ on-farm manure       ☒ off-farm manure

☒ soil amendments      ☒ side dressing      ☒ foliar fertilizers   ☒ biodynamic preparations

☐ soil inoculants      ☐ double digging     ☐ other (specify)      ☐ subsoiling

**Please elaborate (details as to when practices are performed, how frequently, rate of application, etc.):**

| |
|---|
| Soil amendments annually once in April. Side dressing four times per year. |
| Foliar fertilizers May to July, once per month. |
| Biodynamic preparation in March and April. |
| |

**What are your general soil/media types?**

| |
|---|
| Cold Creek compost basic mix, Happy Frog, Royal Gold, Perlyte #4. |
| |

**How do you determine soil/nutrient deficiencies?**

☐ soil testing              ☐ microbiological testing          ☐ tissue testing

☒ observation of soil       ☒ observation of crop health       ☐ crop quality testing

☒ comparison of crop yields ☐ other (specify)

**If you use fertilizers with high salt content (sodium nitrate, potassium sulfate, gypsum, etc.), how do you prevent salt built-up?**        ☒ Not applicable

| |
|---|
| We don't use high salt content products but if we did we would flush with water. |
| |

**How are fertilizers stored on your farm?**

| |
|---|
| In a gated and locked barn on a concrete floor. |
| |

## B. CROP ROTATION PLANS

**If you practice a crop rotation, please describe your strategies.** ☐ Not applicable

> We will rotate crops with organic produce.

## C. COMPOST USE:

**Do you source compost or build your own?**

☐ source          ☒ build          ☐ Not applicable *(skip to D. MANURE USE)*

*If you source compost, from where?*

*If you build compost, please answer the following questions.*

**List all compost ingredients/additives.**

> Manure, worm castings, bat guano

**What composting method do you use?**

☐ in-vessel          ☒ static aerated pile          ☐ windrows          ☐ other (specify)

**What is your Carbon to Nitrogen (C:N) ratio?**

> Unknown

**Do you monitor temperature?**    ☐ Yes ☒ No

*If yes, what temperature is maintained?*

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

**How long is this temperature maintained?**

| N/A |
| --- |
|  |

**If compost is windrowed, how many times are materials turned?** ☒ Not applicable

| N/A |
| --- |
|  |

**D. MANURE USE:**

**Do you source manure or collect manure from your own livestock?**

☐ source          ☒ collect          ☐ Not applicable *(skip to Do you monitor fertility?)*

*If you source manure, from where?  If you collect manure, please answer the following questions.*

|  |
| --- |
|  |

**What forms of manure do you use?**

☐ none                    ☐ liquid              ☐ semi-solid          ☒ piled
☐ fully composted      ☐ pelleted          ☐ other (specify)

|  |
| --- |
|  |

**List all sources of off-farm manure.**

| N/A |
| --- |
|  |

**List all manure ingredients/additives.**

| N/A |
| --- |
|  |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

**Do you monitor fertility?** ☐ yes ☒ no *(skip to NATURAL RESOURCES)*

If yes, how often?     ☐ weekly     ☐ monthly     ☐ annually     ☐ as needed     ☐ other (specify)

|  |
|---|
|  |
|  |

**Rate the effectiveness of your fertility management program.**

☐ excellent     ☒ satisfactory     ☐ needs improvement

**What changes do you anticipate?**

|  |
|---|
| Unknown |
|  |

## NATURAL RESOURCES

### A.  BIODIVERSITY MANAGEMENT: WHOLE FARM CONSIDERATIONS

**Does your site plan include features such as hedgerows, woodlands, wetlands, riparian zones, and special habitats?**     ☒ Yes ☐ No

**Are you aware of sensitive habitat or species of special concern on your property (e.g. vernal pools, long eared owl)?**   ☐ Yes ☒ No

*If yes, please list.*

|  |
|---|
|  |
|  |

**Do you take steps to plan/provide for biodiversity conservation?**     ☒ Yes ☐ No

*If yes, how?*

☒ understand farm's location within watershed

☐ ascertain what native plants and animals existed on the land before it was a farm

☒ learn about regional natural areas and conservation priorities

☐ work with neighbors/others to enhance biodiversity (connectivity, restoration, etc.)

☒ other (specify)

|  |
|---|
| Organic garden |
|  |

**Please elaborate:**

|  |
|---|
|  |

**Do you manage water for the needs of crops/livestock, native species and riparian ecosystems?**      ☒ Yes ☐ No

*If yes, how?*

☒ plant regionally appropriate crops

☒ conserve water      ☒ manage water for priority species

☐ retain/restore vegetated riparian buffers/wetlands

☐ protect/improve natural hydrology/ecological function of riparian area

☐ other (specify)

**Please elaborate:**

## B.  BIODIVERSITY MANAGEMENT: UNCULTIVATED AREA BIODIVERSITY

**Do you take actions to provide habitat for pollinators, insect predators, birds and bats?**
☒ Yes ☐ No

*If yes, how?*

☒ bird/bat/bee boxes

☒ hedgerows/windbreaks

☒ maintain/provide natural roosting/nesting/foraging sites

☐ other (specify)

Plant polinators

**Please elaborate:**

**Have you been restoring and/or protecting natural areas?**   ☐ Yes ☒ No

*If yes, how?*

☐ manage for native plants/wildlife specific to the site

☐ preserve/restore wildlife corridors

☐ establish legal conservation areas

☐ other (specify)

|  |
|--|
|  |
|  |

**Please elaborate:**

|  |
|--|
|  |
|  |

**Do you have problems with invasive weeds?**   ☐ Yes ☒ No

*If yes, please list.*

|  |
|--|
|  |
|  |

**Do you have problems with predators or other wildlife?**   ☐ Yes ☒ No

*If yes, please list.*

|  |
|--|
|  |
|  |

**Do you take actions to control invasive plant/animal species, especially those threatening natural areas?**   ☐ Yes ☒ No

*If yes, how?*

☐ learn about invasives

☐ use weed- and pest-free seed/planting stock/soil amendments/mulches

☐ monitor for new introductions and control immediately

☐ suppress invasives using organic methods

☐ other (specify)

|  |
|--|
|  |
|  |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

**Please elaborate:**

C. **BIODIVERSITY MANAGEMENT: CULTIVATED AREA BIODIVERSITY**

**Do you use farm practices that benefit and provide habitat for wildlife?**   ☒ Yes ☐ No

*If yes, how?*

☐ companion planting/intercropping

☐ crop diversity

☐ wildlife-friendly fences

☐ manage fallow fields for wildlife

☒ avoid nests during breeding season

☒ stagger mowing/tilling practices\

☒ plan fields to leave food/cover for wildlife

☐ other (specify)

**Please elaborate:**

D. **SOIL CONSERVATION**

**Do you practice soil conservation?**   ☒ Yes ☐ No

*If yes, how?*

| | | | |
|---|---|---|---|
| ☐ terraces | ☐ contour farming | ☐ strip cropping | ☐ winter cover crops |
| ☐ firebreaks | ☐ undersowing/interplanting | ☐ conservation tillage | |
| ☐ windbreaks | ☒ tree lines☐ retention ponds | ☐ permanent waterways | |
| ☐ riparian management | ☒ maintain wildlife habitat | ☐ other (specify) | |

**Please elaborate:**

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

**Do you experience problems with soil erosion?**      ☐ Yes ☒ No

*If yes, why and on which sites? Please describe any mitigation efforts.*

| |
|---|
| |
| |

**Do you conduct soil conservation monitoring?**      ☐ Yes ☒ No

*If yes, how often?*

☐ weekly      ☐ monthly      ☐ annually      ☐ as needed ☐ other (specify)

| |
|---|
| |
| |

**Rate the effectiveness of your soil conservation program.**

☐ excellent          ☐ satisfactory          ☐ needs improvement

**What changes do you anticipate?**

| |
|---|
| N/A |
| |

## E.  WATER USE

**What do you use water for?**

☒ irrigation    ☒ livestock    ☐ foliar sprays    ☒ greenhouse      ☐ other (specify)

| |
|---|
| |
| |

**Source of Water:**

☐ on-site well(s)      ☐ river/creek            ☒ spring          ☐ pond      ☒ municipal/county
☐ irrigation district   ☐ rainwater catchment      ☐ other (specify)

| |
|---|
| |
| |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

**Type of irrigation system:**

☐ none          ☒ drip          ☐ flood          ☐ center pivot          ☐ other (specify)

|  |
|---|
|  |
|  |

**Do you store water?**          ☐ Yes ☒ No

*If yes, how is water stored?*

| We plan to store water in a tank but its not installed at this time. |
|---|
|  |

**Do you monitor water use?**          ☒ Yes ☐ No

*If yes, how? What is your anticipated water use?*

| Timers |
|---|
| Drought tolerant planting |

**What inputs are applied through the irrigation system?**

| PH balance, organic veg, organic flowering, nutrients |
|---|
|  |

**What products do you use to clean irrigation lines/nozzles?**

| None |
|---|
|  |

**What practices are used to protect water quality?**

☒ fencing livestock from waterways          ☒ scheduled use of water to conserve its use

☒ drip irrigation          ☐ micro-spray

☒ hand watering          ☐ (specify)

|  |
|---|
|  |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

**List known contaminants in water supplies in your area.** *Attach residue analysis and/or salinity test results, if applicable*

| |
|---|
| We are not aware of any contaminents. |
| |

**How do you determine the effectiveness of your water quality program?**

| |
|---|
| We have Municipal water so that is monitored by Willow Water. The spring water has |
| been tested by Alpha Labs. |

**How often do you conduct water quality monitoring?**

☐ weekly     ☐ monthly     ☐ annually     ☒ as needed

**Rate the effectiveness of your water quality program.**

☐ excellent     ☒ satisfactory     ☐ needs improvement

**What changes do you anticipate?**

| |
|---|
| None |
| |

**F.  ENERGY USE**

**What types of energy do you use?**

☒ grid     ☐ solar     ☐ generator     ☐ other (specify)

*If you use a generator, please describe what measures you take to suppress the sound:*

| |
|---|
| N/A |
| |

*If you use a generator, how are spent oil, used oil filters, expired batteries and other hazardous materials managed? How is fuel stored on your farm?*

| |
|---|
| N/A |
| |

*If you use a generator, how are leaks and spills managed?*

| |
|---|
| N/A |
| |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

## WEED AND PEST MANAGEMENT

**A.  WEED MANAGEMENT PLAN:**
**What weed control methods do you use?**

| |
|---|
| Tiling, weed eating, mowing |
| |

**USE OF WEED MANAGEMENT STRATEGIES:**
**If you use plastic or other synthetic mulches, is the mulch removed at the end of the growing or harvest season?**          ☐ Yes ☐ No

*If no, why not*

| |
|---|
| N/A |
| |

**Who applies herbicides on your farm?**

☐ personally      ☐ employees    ☒ I don't use herbicides

**Where are herbicides stored on your farm?**   ☒ Not applicable

| |
|---|
| |
| |

**How do you monitor the effectiveness of your weed management program?**

☐ weed counts
☒ observation of weed types
☐ comparison of crop yields
☐ records kept of observations/counts
☐ other (specify)

| |
|---|
| |
| |

**Rate the effectiveness of your weed management program:**

☐ excellent          ☒ satisfactory       ☐ needs improvement

**What changes do you anticipate?**

| |
|---|
| None |
| |

## B. PEST AND DISEASE MANAGEMENT PLAN

**What are your known problem pests/pathogens?**

| |
|---|
| None |
| |

**Do you work with a pest control advisor?**     ☐ Yes ☒ No

If yes, give name and contact information.

| |
|---|
| |
| |

**What strategies do you use to control pest damage to crops?**

| | | | |
|---|---|---|---|
| ☐ crop rotation | ☐ genetic resistance | ☒ habitat for natural enemies | ☐ timing of planting |
| ☐ companion planting | ☐ frog ponds | ☒ bat houses | ☒ bird houses |
| ☒ hand picking | ☒ monitoring | ☐ trap crops | ☐ physical barriers |
| ☐ traps | ☒ physical removal | ☐ lures | ☐ insect repellents |
| ☐ animal repellents | ☐ release of pest predators | | ☐ use of chemicals |
| ☐ other (specify) | | | |

**Please elaborate:**

| |
|---|
| |
| |

**What strategies do you use to control pathogen damage to crops?**

| | | | |
|---|---|---|---|
| ☐ crop rotation | ☐ field sanitation | ☐ plant spacing | ☐ genetic resistance |
| ☐ timing of planting | ☐ vector management | ☐ soil balancing | ☐ solarization |
| ☐ companion planting | ☐ compost/tea use | ☐ use of chemicals | ☒ other (specify) |

**Please elaborate:**

| |
|---|
| Neem |
| |

**Do you keep a record of how often you utilize these pest control methods, i.e., dates when you scout or apply inputs to a specific site or crop?**     ☒ Yes ☐ No

| |
|---|
| Spray Neem once/week. |
| |

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

**Who applies pesticides, fungicides or other biocides on your farm?**

☐ personally      ☐ employees    ☒ I don't use those

**How are pesticides, fungicides or other biocides stored on your farm?** ☒ Not applicable

|  |
|--|
|  |

**How do you monitor the effectiveness of your pest management program?**
*Attach copies of your test results, if applicable.*

☐ crop quality testing       ☐ insect monitoring with traps  ☒ observation of crop health  ☐ soil testing
☐ microbiological testing    ☒ observation of soil           ☐ comparison of crop yields
☐ monitoring records kept    ☐ other (specify)

|  |
|--|
|  |

**How often do you conduct pest monitoring?**

☒ weekly      ☐ monthly       ☐ annually        ☐ as needed  ☐ other (specify)

|  |
|--|
|  |

**Rate the effectiveness of your pest/pathogen management program.**

☐ excellent   ☒ satisfactory   ☐ needs improvement

**What changes do you anticipate?**

| None |
|--|
|  |

## CERTIFIED MENDOCINO COUNTY GROWN – SUSTAINABLY FARMED CERTIFICATION

The Mendocino County Department of Agriculture will use this document as a first step in evaluating whether an operation qualifies for the "Certified Mendocino County Grown" sustainably farmed certification. In order to qualify, a cultivator must:

1. maintain or improve soil quality over time
2. take action to enhance on-farm biodiversity
3. use only inputs (including fertility inputs) approved by the National Organic Program.

Keep in mind that the California Department of Pesticide Regulation has put together a list of legal pesticides approved for use on cannabis that is more restrictive than approved pesticides for Certified Organic food production. Thorough answers are encouraged in the 'please elaborate' sections provided below the checkbox answers.

☒I am interested in the sustainably farmed certification
☐I am not interested in the sustainably farmed certification

Medical Cannabis Cultivation and Operations Plan
(Rev. 04/17/2017)

## INPUTS

**List all soil mix ingredients, rooting hormones, fertility products, foliar sprays, and weed, disease and pest management inputs used.**

| Name and Formulation | Brand Name/Source | Reason for Use |
|---|---|---|
| Neem | Dyna-Grow | Preventative |
| Happy Frog | Happy Frog | Soil amendment |
| Royal Gold | Happy Frog | Soil amendment |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**DIANE CURRY**
Interim Agricultural
Commissioner

**ARIF KEVER**
Assistant Agricultural
Commissioner
Assistant Sealer of Weights &
Measures



**COUNTY OF MENDOCINO**
**DEPARTMENT OF AGRICULTURE**

CONTACT INFORMATION
890 N Bush Street
Ukiah, California 95482
TELEPHONE: (707) 234-6830
FAX: (707) 463-0240
Email: agcomm@co.mendocino.ca.us
Web: www.co.mendocino.ca.us

## PROPERTY OWNER CONSENT FORM TO ALLOW CANNABIS CULTIVATION

I, _____, declare under penalty of perjury that:

1. I am the record title owner of the property located at:

   _____

   _____
   (Physical Address)

   Mendocino County, California, APN _____, or the title owner is a trust or business entity named,_____
   And I have been duly authorized to represent such trust or business entity for purposes of executing this document.

2. I, or the trust or business entity I represent, am aware that the applicant is in the process of applying to the Mendocino County Department of Agriculture for a permit to cultivate medical cannabis on the property described above in conformance with all the provisions of Chapters 10A.17 and 20.242 of the Mendocino County Code.

3. I, or the trust or business entity I represent, understand that, as the owner of the parcel containing a Medical Cannabis Cultivation Site, I am required to sign this agreement in order for the applicant's application to go forward and understand that I may be liable under local, state, or federal law for the cannabis cultivation activities I am allowing on my property.

Signed this _____ day of _____, 20___

_____
(Landowner Signature)

_____
(Renter Signature)

**DIANE CURRY**
Interim Agricultural
Commissioner

**ARIF KEVER**
Assistant Agricultural
Commissioner
Assistant Sealer of Weights &
Measures

**COUNTY OF MENDOCINO**
**DEPARTMENT OF AGRICULTURE**

CONTACT INFORMATION
890 N Bush Street
Ukiah, California 95482
TELEPHONE: (707) 234-6830
FAX: (707) 463-0240
Email: agcomm@co.mendocino.ca.us
Web: www.co.mendocino.ca.us

## AFFIDAVIT

### CULTIVATION PURSUANT TO APPLICATION FOR 10A.17 PERMIT

By affixing my signature to this affidavit, I hereby declare that:

1. I have submitted an application to the Mendocino County Department of Agriculture for a permit to cultivate medical cannabis pursuant to Mendocino County Code Chapter 10A.17.

2. I affirm that my application packet for a cultivation permit pursuant to Mendocino County Code Chapter 10A.17 either meets the requirements to obtain such cultivation permit or that I am actively in the process of fulfilling such requirements.

3. All cannabis cultivation activities that I, my agents or employees conduct pursuant to a permit from the Mendocino County Department of Agriculture shall be solely for medicinal purposes and all cannabis products produced by me, my agents or employees are intended to be consumed solely by qualified patients entitled to the protections of the Compassionate Use Act of 1996 (codified at Health and Safety Code section 11362.5).

4. All cannabis cultivation activities conducted by me, my agents or employees shall be conducted in conformance with the requirements of Mendocino County Code Chapter 10A.17 and with the California Medical Cannabis Regulation and Safety Act.

5. All cannabis or cannabis products under my control or the control of my agents or employees, and cultivated pursuant to Mendocino County Code Chapter 10A.17 and the California Medical Cannabis Regulation and Safety Act will be distributed within the State of California.

I declare under penalty of perjury, under the laws of the State of California, that the information provided on this affidavit is true and correct and that I am authorized to sign on behalf of the entity listed below.

Affiant Signature: _____

Printed Name: _____ Chris Gurr _____

Official representative signing for all members of: _____

Date: _____ April 28, 2017 _____

| Department Use Only | |
|---|---|
| Parcel(s) # | |
| Application # | |

(Affix Seal here)



COUNTY OF MENDOCINO
DEPARTMENT OF AGRICULTURE
(Rev. 04/17/2017)

## FINGERPRINT WORKSHEET

| Name of Applicant: | Chris Gurr | | |
|---|---|---|---|
| Business Address: | 1181 Boonville Rd | | |
| | City: Ukiah | State: CA | |
| | Zip: 95482 | | |

**Note to Applicant:**
The following people must have LiveScan fingerprints taken: applicant or any individual engaged in the management of, or employed by, the cultivator.  The following will result in a failed LiveScan: "a violent felony as defined in Penal Code section 667.5(c) within the State of California, or a crime that would have constituted a violent felony as defined in Penal Code section 667.5(c) if committed in the State of California and is not currently on parole or felony probation.  A conviction within the meaning of this section means a plea or verdict of guilty or a conviction following a plea of nolo contendere (10A.17.090(M))."

The Department of Agriculture is in the process of obtaining Department of Justice (DOJ) clearance to receive results directly.  In the interim, applicants must bring results issued by the DOJ to the Department of Agriculture for a pass or fail determination.   Results must be submitted to the Department of Agriculture prior to a permit being issued.
LiveScan Request Form:
https://oag.ca.gov/sites/all/files/agweb/pdfs/fingerprints/forms/bcia_8016RR.pdf
**DOJ Approved LiveScan Locations:**
https://oag.ca.gov/fingerprints/locations?county=Mendocino

Please provide the following information regarding individuals from your cultivation operation that will need to have fingerprints taken:

| Name | Title | Date Fingerprints Taken |
|---|---|---|
| | | |
| | | |
| | | |

**Note: please return this form and a copy of LiveScan receipts to the Department of Agriculture once all fingerprints have been taken.**



STATE OF CALIFORNIA
BCIA 8016RR
(orig. 04/2001; rev. 10/2014)

DEPARTMENT OF JUSTICE
Page 1 of 2

## REQUEST FOR LIVE SCAN SERVICE
### (Record Review or Foreign Adoption)

### Applicant Submission

**CA0349435**
ORI (Code assigned by DOJ)

Type of Application (Check One Only)    ☒ Record Review    ☐ Foreign Adoption

Medical cannabis permit
Reason for Application

**Contributing Agency Information:**

**DEPARTMENT OF JUSTICE**
Agency Authorized to Receive Criminal Record Information

**P.O. BOX 903417**
Street Address or P.O. Box

**SACRAMENTO**          **CA   94203-4170**
City                                   State   ZIP Code

**07041**
Mail Code (five-digit code assigned by DOJ)

**RECORD REVIEW UNIT**
Contact Name (mandatory for all school submissions)

**(916) 227-3835**
Contact Telephone Number

**Applicant Information:**

Gurr
Last Name

Chris                          O
First Name                     Middle Initial   Suffix

Other Name
(AKA or Alias)  Last

Christen
First                                    Suffix

July 25, 1956      Sex ☒ Male   ☐ Female
Date of Birth

Y4259856
Driver's License Number

6'1"      200      Hazel      Brown
Height   Weight   Eye Color   Hair Color

Misc. Number (Other Identification Number)

Dougherty County, GA    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
Place of Birth (State or Country)   Social Security Number

(404) 617-0303
Telephone Number

417 W. 3rd Ave.
Street Address or P.O. Box

Albany                         GA 31701
City                           State   ZIP Code

Level of Service:      ☒ DOJ Only

If re-submission, list original ATI number (Must provide proof of rejection):
Original ATI Number

☐ Foreign Government Embassy: (Mandatory for Foreign Adoption requests pursuant to Penal Code section 11105(c)(12))

☐ Designee -- Do not include Employer: (Optional for individual designated by applicant to Penal Code section 11124)

Designee or Embassy Name

Street Address or P.O. Box

City                    State    Country          ZIP Code     Telephone Number

**Live Scan Transaction Completed By:**

Name of Operator                            Date

Transmitting Agency        LSID            ATI Number        Amount Collected/Billed

ORIGINAL - Live Scan Operator          SECOND COPY - Applicant

STATE OF CALIFORNIA
BCIA 8016RR
(orig. 04/2001; rev. 10/2014)

DEPARTMENT OF JUSTICE
Page 2 of 2

## REQUEST FOR LIVE SCAN SERVICE
### (Record Review or Foreign Adoption)

### Privacy Notice

**Collection and Use of Personal Information.** The Record Review Unit in the Department of Justice collects the information requested on this form as authorized by Penal Codes 11121 and 11105(C)(12).  The Record Review Unit uses this information to process applications pertaining to Live Scan service for record review or foreign adoption.  In addition, any personal information collected by state agencies is subject to the limitations in the Information Practices Act and state policy. The Department of Justice's general privacy policy is available at: **http://oag.ca.gov/privacy-policy**.

**Providing Personal Information.**  All the personal information requested in the form must be provided.

**Access to Your Information.** You may review the records maintained by the Record Review Unit in the Department of Justice that contain your personal information, as permitted by the Information Practices Act.  See below for contact information.

**Possible Disclosure of Personal Information.** In order to process applications pertaining to Live Scan service for record review or foreign adoption, we may need to share the information you give us with other government agencies.

The information you provide may also be disclosed in the following circumstances:

- In response to a Public Records Act request, as allowed by the Information Practices Act;

- To another government agency as required by state or federal law;

- In response to a court or administrative order, a subpoena, or a search warrant.

**Contact Information.** For questions about this notice or access to your records, you may contact the Record Review Unit via telephone at (916) 227-3835 or by mail at:

Department of Justice
Bureau of Criminal Information & Analysis
Record Review Unit
P.O. Box 903417
Sacramento, CA 94203-4170



**COUNTY OF MENDOCINO**
**DEPARTMENT OF PLANNING AND BUILDING SERVICES**
860 NORTH BUSH ST · UKIAH · CALIFORNIA · 95482
120 WEST FIR ST · FORT BRAGG · CALIFORNIA · 95437

IGNACIO GONZALEZ, INTERIM DIRECTOR
Telephone 707-234-6500
Fax 707-463-5709
Ft. Bragg Phone 707-964-5379
Ft. Bragg Fax 707-961-2427
pbs@co.mendocino.ca.us
www.co.mendocino.ca.us/planning

## SITE PLAN REQUIREMENTS

**Your application for a building permit must include an 8½" x 11" site plan.  The information shown on the site plan should be legible, drawn to scale and must show the following:**

- Property owner's name, property address and Assessor's Parcel Number/s (APNs)
- Legal parcel configuration clearly shown with *all* property boundaries, dimensions and acreage.
- Adjacent streets, both public and private, and any access easements.
- Utility lines and public utility easements. (Power, water, sewer, etc.)
- Distance from the centerline of any public or private roadway to property line
- Proposed structure or addition, including the distance from property lines and other structures.
- All *existing* structures clearly labeled with use and distance from property line.
- Driveways, parking and loading areas, including the size of parking spaces and setbacks from property lines.
- Existing and proposed septic systems, leach field (including replacement field) and wells with distances from structures.
- Location of any signs for commercial use, and distances to property lines.
- Fences and retaining walls.
- Extent of Flood Plain (if applicable)
- Lakes, ponds or streams, to be identified with names if appropriate.
- North arrow
- Scale (if applicable)

**Site plans which WILL NOT be acceptable:**

- Copies from the CALFIRE application
- Portions of larger, scaled site plans. (Must show entire boundary of parcel)
- Copies of site plans previously used with approval signatures from previous building permits.
- Copies of previously used site plans with "white out" areas.

NOTE: Upon submission and review, staff may request more information before processing the application.

**FAILURE TO INCLUDE ANY OF THE REQUIRED INFORMATION MAY RESULT IN THE REJECTION OF YOUR APPLICATION AND THE DELAY OF PROCESSING YOUR BUILDING PERMIT APPLICATION, OR INVALIDATE YOUR APPROVED BUILDING PERMIT.**

**See reverse for Sample Site Plan >**

**SITE PLAN**                                         PERMIT NO: _____

## SAMPLE SITE PLAN



**SITE PLAN MUST INCLUDE ALL INFORMATION RELEVANT TO SITE**

APPLICANT: _____

APN/S (LEGAL PCL.): _____

CULTIVATION SITE ADDR: _____

_____

_____

### ZONING INFORMATION
*OFFICE USE ONLY*

ZONING: _____     FRONT: _____

ACREAGE: _____     REAR: _____

CORRIDOR: _____     SIDE: _____

**COUNTY OF MENDOCINO**
**DEPARTMENT OF PLANNING AND BUILDING SERVICES**
860 NORTH BUSH STREET · UKIAH · CALIFORNIA · 95482
120 WEST FIR STREET · FT. BRAGG · CALIFORNIA · 95437

IGNACIO GONZALEZ, INTERIM DIRECTOR
TELEPHONE: 707-234-6650
FAX: 707-463-5709
FB PHONE: 707-964-5379
FB FAX: 707-961-2427
pbs@co.mendocino.ca.us
www.co.mendocino.ca.us/planning

## PROPERTY PROFILE - ASSESSOR PARCEL NO. 0010501400

**OWNER:**     COUNTY OF MENDOCINO

**APPLICANT:**     COUNTY OF MENDOCINO          **AGENT:**

**REQUEST:**

**SITE ADDRESS:**     501 LOW GAP RD, UKIAH

**ACREAGE:**

**GENERAL PLAN:**          **ZONING:**          **COASTAL ZONE:**

**EXISTING USES:**          **SUPERVISORIAL DISTRICT:**

**TOWNSHIP:**          **RANGE:**          **SECTION:**          **USGS QUAD#:**

**CALFIRE RESPONSIBILITY AREA:**          **MS4 AREA:**          **SPLIT ZONES:**

**WILLIAMSON ACT:**  /          **RELATED CASES ON SITE:**

### SETBACK INFORMATION

**FRONT YARD:  REAR YARD:**                         **LEFT YARD:  RIGHT YARD:     CORRIDOR**
**PRESERVATION:  HEIGHT LIMITATION:**

### ZONING CLEARANCE APPROVAL

The PROPOSED USE for parcel (APN) is:

ZONING CLEARANCE APPROVED (circle one):          YES          NO

Prepared by Planner: _____  Date: _____

### BUILDING DIVISION CLEARANCE

The Building Division has reviewed the address file and has the following comments:

Building Inspector: _____  Date: _____

**ENVIRONMENTAL DATA (to be completed by Planner)**

| | | COUNTY WIDE |
|---|---|---|
| **Yes** | **No** | |
| | | 1.  Alquist-Priolo Earthquake Fault Zone – Geotechnical Report  #GS_____ |
| | | 2.  Floodplain/Floodway Map –Flood Hazard Development Permit #FP_____ |
| | / | 3.  Within/Adjacent to Agriculture Preserve / Timberland Production |
| | | 4.  Within/Near Hazardous Waste Site |
| | | 5.  Natural Diversity Data Base |
| | | 6.  Airport CLUP Planning Area – ALUC#_____ |
| ☐ | ☐ | 7.  Adjacent to State Forest/Park/Recreation Area. |
| ☐ | ☐ | 8.  Adjacent to Equestrian/Hiking Trail. |
| ☐ | ☐ | 9.  Hazard/Landslides Map |
| ☐ | ☐ | 10. Require Water Efficient Landscape Plan. |
| ☐ | ☐ | 11. Biological Resources/Natural Area Map. |
| ☐ | ☐ | 12. Fire Hazard Severity Classification: ☐ LRA     ☐ SRA-CDF# |
| ☐ | ☐ | 13. Soil Type(s)/Pygmy Soils. |
| ☐ | ☐ | 14. Wild and Scenic River. |
| ☐ | ☐ | 15. Specific Plan Area. |
| ☐ | ☐ | 16. State Permitting Required/State Clearinghouse Review |
| ☐ | ☐ | 17. Oak Woodland Area |

| | | COASTAL ZONE |
|---|---|---|
| **Yes** | **No** | |
| | | 16. Exclusion Map. |
| | | 17. Coastal Groundwater Study Zone. |
| | | 18. Highly Scenic Area/Special Communities. |
| ☐ | ☐ | 19. Land Capabilities/Natural Hazards Map. |
| ☐ | ☐ | 20. Habitats/ESHA/Resources Map. |
| ☐ | ☐ | 21. Appealable Area/Original Jurisdiction Map. |
| ☐ | ☐ | 22. Blayney-Dyett Map. |
| ☐ | ☐ | 23. Ocean Front Parcel (Blufftop Geology). |
| ☐ | ☐ | 24. Adjacent to beach/tidelands/submerged land/Public Trust Land. |
| ☐ | ☐ | 25. Noyo Harbor/Albion Harbor. |



SHARI L. SCHAPMIRE
TREASURER-TAX COLLECTOR

JULIE FORRESTER
ASSISTANT TREASURER-TAX
COLLECTOR

MENDOCINO COUNTY TREASURER-TAX COLLECTOR
501 LOW GAP RD., ROOM #1060, UKIAH, CA 95482
(707) 234-6848

## *Special Notice to Medical Cannabis Cultivators*

As you are aware, on November 8, 2016, Measure AI was passed by Mendocino County voters; this measure imposed a cannabis business tax on commercial cannabis businesses located in the unincorporated area of the County. The framework for this tax measure was adopted by the Mendocino County Board of Supervisors on August 2, 2016, codified in Ordinance No. 4361. Per Ordinance No. 4361, tax on commercial cannabis cultivation, excluding nurseries, shall be imposed as follows:

*Section 6.32.050(B)(1)*
*Every person who cultivates commercial cannabis in the unincorporated area of the County shall pay an annual commercial cannabis business tax.* **The initial tax rate effective January 1, 2017 through June 30, 2020, shall be set at two and one half percent (2.5%) of the gross receipts per fiscal year; provided, however, that cultivators shall pay not less than the following amounts:**

    a. *Persons cultivating less than or equal to two thousand five hundred (2,500) square feet of cannabis shall pay a tax of no less than one thousand two hundred fifty dollars ($1,250) per growing cycle.*

    b. *Persons cultivating two thousand five hundred one (2,501) square feet and up to five thousand (5,000) square feet of cannabis shall pay a tax of no less than two thousand five hundred dollars ($2,500) per growing cycle.*

    c. *Persons cultivating more than five thousand (5,000) square feet of cannabis shall pay a tax of no less than five thousand dollars ($5,000) per growing cycle.*

While the business tax measure became effective January 1, 2017, the above-mentioned section applicable to medical cannabis cultivation had not been imposed as the cultivation framework had not been adopted by the Mendocino County Board of Supervisors. This notice serves to inform all medical cannabis cultivators that the Board did adopt Ordinance No. 3081 - Ordinance Adopting Chapter 10A.17 – Medical Cannabis Cultivation Ordinance and Chapter 20.242 – Medical Cannabis Cultivation Site on April 4, 2017. Per Government Code §25123, this ordinance shall become effective 30 days from the date of final passage.

**Therefore, effective May 4, 2017, the above-mentioned cannabis business tax shall be imposed on all medical cannabis cultivators.** Please complete the Commercial Cannabis Cultivation Business Tax Registration Form included herewith and return the form, as well as your application fees, to the above address. Additional information relating to the cannabis business tax will be provided as it becomes available.

Feel free to contact this office directly with any questions or concerns you may have.

Dated this 14th day of April, 2017
Shari L. Schapmire, Treasurer-Tax Collector



Mendocino County Treasurer-Tax Collector
501 Low Gap Road, Room #1060
Ukiah, CA  95482
(707) 234-6848

## *Commercial Cannabis Cultivation*
## *Business Tax Registration Form*

| | |
|---|---|
| **Business Name:** | Goose Head Valley Corporation |
| **Business Mailing Address:** | 1181 Boonville Rd |
| | (Street Address or Post Office Box) |

| | | |
|---|---|---|
| Ukiah | CA | 95482 |
| (City) | (State) | (Zip Code) |

**Business Telephone Number:** (404) 617-0303

**Business Physical Location:** 1181 Boonville Rd
(Street Address)

| | | |
|---|---|---|
| Ukiah | CA | 95482 |
| (City) | (State) | (Zip Code) |

**Business Email Address:** gurr.chris@gmail.com

**Business Contact Person:** Chris Gurr

**Parcel Number of Physical Location:** 18519212

**Permit Type:** 2-B

**Number of Annual Growing Cycles:** 2-3

I declare, under penalty of perjury, that the above is true and correct to the best of my knowledge and belief.

_____      May 1, 2017
Authorized Signature          Date of Signature

_____Chris Gurr_____      _____President_____
Printed Name          Title

(March 2017)

# Exhibit B



Mendocino County
Department of Agriculture
890 N. Bush St.
Ukiah CA 95482
(707) 234-6830

File No: AG_2017-0069
Cultivation site: 1181 BOONVILLE RD, UKIAH, CA 95482
Permit Type: 2B LARGE MIXED LIGHT
Date: 5/4/2017

# Application Receipt

This receipt, when signed and embossed, certifies that the Department of Agriculture is in receipt of an application to cultivate cannabis at the above listed address.  The garden at this site is considered to be in compliance, or working towards compliance until such time as a permit is issued or denied.

Receipt issued to: GOOSE HEAD VALLEY CO.

GURR CHRISTEN

1181 BOONVILLE RD, UKIAH, CA 95482

Signed:_____

Diane Curry, Interim Agricultural Commissioner

# Exhibit C

# THE McEDWARDS GROUP

1025 Hearst Willits Road
Willits, CA 95490
License #743428
707/354-4618
themcedwardsgroup@comcast.net

August 13, 2017
Job No. 2040.01.01

Anne Marie Borges and Christian Gurr
1181 Booneville Road
Ukiah, CA 95482

Pumping of Irrigation Well
1181 Boonville Road
Ukiah, California

Dear Ms. Borges and Mr. Gurr,
This letter reviews a July 25, 2017 State of California Department of Fish and Wildlife (CDFW) memorandum from Wesley Stokes to Warden Hemphill regarding the irrigation well on your property at 1181 Boonville Road affecting the flow in nearby Richardson Creek.

Mr. Stokes states that the well is located in a broad flood plan, is about 30 feet deep, has a static water level about 15 feet deep, is located about 175 feet from the creek, is equipped with a two-horsepower pump that, in his experience, is capable of producing 50 gallons per minute, and that Mr. Gurr informed him that about 1500 gallons per day (gpd) was pumped from the well to irrigate crops. Mr. Stokes also states that the water level in the creek is about 10 feet below the adjacent floodplain and that flow in the creek was visually estimated to be about 100 gallons per minute (gpm). It appears that based on these observations alone, that Mr. Stokes concluded that "… this water withdrawal is likely a substantial diversion of natural streamflow." Mr. Stokes goes on to define substantial diversions as "those that occur during periods of low flow or cause a visual or measurable change in streamflow." Mr. Stokes then states that such substantial diversions "… are subject to "CDFW's Lake or Streambed Alteration Program pursuant to Fish and Game Code section 1602(a)."

We have several comments regarding Mr. Stokes' conclusions and statements. We also have additional comments that my help to better understand the physical setting. These comments are presented below in no particular order.

## 1. Flow Rate of Well
1500 gpd from the well is very nearly 1 gpm (60 x 24 = 1400) continuous flow, which amount is 1 percent of the 100 gpm creek flow estimated visually by Mr. Stokes. Assuming that the 1gpm is actually diverted from the creek, which we dispute, we ask if 1 percent of the 100 gpm "visually estimated" streamflow flow is considered "substantial" by CDFW. A flow of 1 gpm is 1/5 to 1/10 of the flow from a garden hose under normal water pressure.

## 2. Depth of Water in Creek
The reported water depth of about 10 feet in the creek is 5 feet less that the reported static water level depth in the well. This indicates that Robinson Creek is a losing creek which means water may be flowing from the creek into its banks. It does not mean that this difference in water depth is caused by diversion (capture) of creek water by the well pumping at 1 gpm located about 170 feet distant from the creek.

## 3. Subsurface Streamflow
Mr. Stokes states "Based upon its shallow depth and floodplain location, it is likely that the well is intercepting subsurface streamflow …"

The term "subsurface streamflow" is misleading. Mr. Stokes appears to consider groundwater flow toward the creek as "subsurface streamflow" as if the flow is destined solely to replenish the creek and for no other purpose such as irrigation via a well, and any interception of a portion of this flow is diversion. There is no such thing as subsurface streamflow except below the streambed in the stream channel. By his misguided understanding, almost every well can be considered diverting water from a stream, no matter its location, because all groundwater eventually flows to streams or to lakes/ponds which are drained by streams.

Mr. Stokes has done no hydrogeologic studies to determine the 1 gpm capture zone (discussed below) of the well as affected by the hydraulic gradient of the groundwater flow regime. He states that diversion is "likely" and based on this assumption determines that filing of a Form 1602(a) is required. With a pumping rate of 1 gpm at a location 170 feet from the creek, substantial diversion of water from the creek flowing at 100 gpm is not even remotely likely.

4. Diversion in Excess of Surface Flow
Mr. Stokes states "Based on the estimates of the pump capacity and water demand, the diversion could divert an amount of water that is in excess of surface flow during seasonally low flow periods."

This statement is without foundation. As explained above, there is no diversion of water from the creek - there is only pumping of groundwater that resides within the sediments of the floodplain, which groundwater, if left unaffected, would eventually (years from now) reach the creek. Mr. Stokes does not understand the physical mechanisms at work. He seems to think that because the well pump may be able to pump 50 gpm it will be pumped at 50 gpm. The well will be pumped at the demand rate that he reported. Pumping beyond this demand rate would be uneconomical and would not be sensibly done.

5. No Visible or Measurable Change Reported
That diversion is not occurring by pumping from the irrigation well is further supported by Mr. Stokes not reporting any visible or measurable change in flow in Richardson Creek.

6. Capture Zone Analysis
A cone of depression in the groundwater table forms around a well when it is pumped. This cone combines with the slope of the water table to establish a groundwater capture zone. The attached Figure 6, taken from the publication *A Systematic Approach for Evaluation of Capture Zones at Pump and Treat Systems* (EPA 600/R-08/003) illustrates this concept. Knowing the transmissivity, hydraulic gradient (slope of water table), and the pumping rate, the steady-state dimensions of the capture zone can be calculated. The attached Figure 14 of the EPA publication shows these calculations. Although these calculations apply to a confined aquifer, they can be used to approximate the flow conditions in an unconfined aquifer having high transmissivity. Based on the limited drawdown at a high pumping rate shown in a recent pump test on the well, we believe the 30 foot deep well penetrates a gravel and/or a coarse sand. A reasonable value for hydraulic conductivity for these materials is 0.1 feet per minute. Multiplying 0.1 feet per minute by a well depth of 30 feet gives a transmissivity, T, of 3 feet squared per minute. A reasonable value for the hydraulic gradient, i, is 0.001. For a flow rate of 1 gpm or 1/7.48 cubic feet per minute we get a capture zone width at the well of 22 feet 1/7.48/2/3/0.001 – see Figure 14). Using these same numbers, we get the distance to the stagnation point to be 7 feet. This means that greater than seven feet downgradient of the well, groundwater is not pumped by the well and is not hydraulically connected to the well flow. Under any reasonably representative values for transmissivity and hydraulic gradient, the well pumping at 1 gpm will not be hydraulically connected to the creek.

Based on the topography of the floodplain, we believe the local groundwater flow direction to be at an acute angle to the creek. This means that distance downgradient from the well to the creek may be greater than the 175 feet distance to the creek mentioned in the memorandum.

7. Neighboring Wells Are Also Near the Creek

Below are photographs of three neighboring wells that also relatively close to the creek.







Below is a Google Earth image of the locations of the three wells and the Gurr well showing their distances from the creek.



As is evident in the image, Well 2 and Well 3 are closer to creek than is the Gurr well and Well 1 is only 10 feet more distant than the Gurr well. All three of these wells are plainly visible when driving to the Gurr residence, yet CDFW did not require their owners to file a Form 1602(a) or take any administrative action against them. We question what is special about the Gurr well that required the filing of Form 1602(a). It appears that what is different about the Gurr well is that it was used to irrigate cannabis plants. This appears to be a case of punitive enforcement of questionably applicable regulations by the CDFW.

## 8. Water Sample Analysis Results

Standard mineral analysis was done on water samples from the creek and from the Gurr well. The laboratory results and chain-of-custody form are attached. A tabulation of sixteen constituent values that can be compared between wells is given below. Concentration units are milligrams per liter unless otherwise stated.

|  | Robinson Creek | Gurr Well | Detection Limit | Well/Creek % Ratio |
|---|---|---|---|---|
| **Metals** | | | | |
| Calcium | 22 | 21 | 1.0 | 95 |
| Iron | <0.1 | 3.9 | 0.1 | 3900 |
| Magnesium | 9.0 | 12.0 | 1.0 | 133 |
| Manganese | <0.02 | 0.4 | 0.02 | 2200 |
| Potassium | 1.3 | 1.0 | 1.0 | 77 |
| Sodium | 8.4 | 14 | 1.0 | 167 |
| | | | | |
| **Conventional Chemistry** | | | | |
| Bicarbonate | 110 | 130 | 5.0 | **181** |
| Hardness, Total | 92 | 101 | 5.0 | **110** |
| Total Dissolved Solids | 110 | 140 | 10 | **127** |
| Total Alkalinity as CACO3 | 89 | 100 | 5.0 | **112** |
| Specific Conductance | 210 | 240 | 20 umhos/cm | **114** |
| Total Anions | 2.15 | 2.40 | | **112** |
| Total Cations | 2.24 | 2.64 | | **118** |
| | | | | |
| **Anions** | | | | |
| Chloride | 5.5 | 6.5 | 0.05 | **118** |
| Fluoride | 0.15 | 0.13 | 0.10 | 87 |
| Sulfate as SO4 | 10.0 | 7.3 | 0.50 | 72 |

Of the sixteen constituent values compared, twelve are greater in the well sample than in the creek sample. This means that the water is the well is distinct from the water in the creek. Of particular note is the presence of iron and manganese in the well sample and their absence in the creek sample.

If you have any questions, please call.

Very Truly Yours,
The McEdwards Group

*Donald G. McEdwards*

Donald G. McEdwards, Ph.D., CE 28088, RG 3872, EG 1208, HG 153

Attachments:    Figures 6 and 14 of EPA 600/R-08/003
                Alpha Analytical Laboratory report and Chain-of-Custody form
                Resume of Donald G. McEdwards

-5-





Drawdown is the change of water level due to pumping.  It is calculated by subtracting water level under pumping conditions from the water level without pumping.

Cone of Depression is the region where drawdown due to pumping is observed.

Capture Zone is the region that contributes the ground water extracted by the extraction well(s).  It is a function of the drawdown due to pumping and the background (i.e., without remedy pumping) hydraulic gradient.  The capture zone will only coincide with the cone of depression if there is zero background hydraulic gradient.

**Figure 6.** Drawdown and capture are not the same

# Capture Zone Width Calculation, One Extraction Well

*Assumptions*:
- homogeneous, isotropic, confined aquifer of infinite extent
- uniform aquifer thickness
- fully penetrating extraction well(s)
- uniform regional horizontal hydraulic gradient
- steady-state flow
- negligible vertical gradient
- no net recharge, or net recharge is accounted for in regional hydraulic gradient
- no other sources of water introduced to aquifer due to extraction (e.g., from rivers or leakage from above or below)



$$x = \frac{-y}{\tan\left(\dfrac{2\pi Ti}{Q} y\right)} \quad -or- \quad y = \pm\left(\frac{Q}{2Ti}\right) - \left(\frac{Q}{2\pi Ti}\right)\tan^{-1}\left(\frac{y}{x}\right)$$

$$X_0 = -Q/2\pi Ti \quad ; \quad Y_{max} = \pm Q/2Ti \quad ; \quad Y_{well} = \pm Q/4Ti$$

(must use consistent units, such as "ft" for distance and "day" for time)

*Where*:

| | | |
|---|---|---|
| $Q$ | = | extraction rate |
| $T$ | = | transmissivity, $K \cdot b$ |
| $K$ | = | hydraulic conductivity |
| $b$ | = | saturated thickness |
| $i$ | = | regional (i.e., pre-remedy-pumping) hydraulic gradient |
| $X_0$ | = | distance from the well to the downgradient end of the capture zone along the central line of the flow direction |
| $Y_{max}$ | = | maximum capture zone width from the central line of the plume |
| $Y_{well}$ | = | capture zone width at the location of well from the central line of the plume |

The above equation is used to calculate the outline of the capture zone. Solving the equation for $x = 0$ allows one to calculate the distance between the dividing streamlines at the line of wells ($2 \cdot Y_{well}$) and solving the equation for $x = \infty$ allows one to calculate the distance between the dividing streamlines far upstream from the wells ($2 \cdot Y_{max}$). One can also calculate the distance from the well to the stagnation point ($X_0$) that marks the downgradient end of the capture zone by solving for $x$ at $y = 0$. For any value of $y$ between $0$ and $Y_{max}$, one can calculate the corresponding $x$ value, allowing the outline of the capture zone to be calculated.

**Figure 14.** Capture zone width calculation, one extraction well.



Alpha Analytical Laboratories Inc.                    e-mail:  clientservices@alpha-labs.com

Corporate: 208 Mason St., Ukiah, CA 95482 • Phone: (707) 468-0401 • Fax: (707) 468-5267
Bay Area: 6398 Dougherty Rd., Suite 35, Dublin, CA 94568 • Phone: (925) 828-6226 • Fax: (925) 828-6309
Central Valley: 9090 Union Park Way, Suite 113, Elk Grove, CA 95624 • Phone: (916) 686-5190 • Fax: (916) 686-5192

ELAP Certificates 1551, 2728, and 2922

11 August 2017

The McEdwards Group
Attn: Don McEdwards
1025 Hearst-Willits Rd
Willits, CA 95490
RE: Standard Mineral
Work Order: 17G2655

Enclosed are the results of analyses for samples received by the laboratory on 07/28/17 11:15. If you
have any questions concerning this report, please feel free to contact me.

Sincerely,

Jeanette L. Poplin For Sheri L. Speaks
Project Manager



## Alpha Analytical Laboratories Inc.

e-mail:  clientservices@alpha-labs.com

Corporate: 208 Mason St., Ukiah, CA 95482 • Phone: (707) 468-0401 • Fax: (707) 468-5267
Bay Area: 6398 Dougherty Rd., Suite 35, Dublin, CA 94568 • Phone: (925) 828-6226  • Fax: (925) 828-6309
Central Valley: 9090 Union Park Way, Suite 113, Elk Grove, CA 95624 • Phone: (916) 686-5190 • Fax: (916) 686-5192

| | | |
|---|---|---|
| The McEdwards Group | Project Manager:  Don McEdwards | |
| 1025 Hearst-Willits Rd | Project:  Standard Mineral | Reported: |
| Willits, CA 95490 | Project Number: [none] | 08/11/17 16:25 |

### ANALYTICAL REPORT FOR SAMPLES

| Sample ID | Laboratory ID | Matrix | Date Sampled | Date Received |
|---|---|---|---|---|
| 1811 Stream | 17G2655-01 | Water | 07/28/17 10:45 | 07/28/17 11:15 |
| 1811 Well | 17G2655-02 | Water | 07/28/17 10:40 | 07/28/17 11:15 |

*The results in this report apply to the samples analyzed in accordance with the chain of custody document. This analytical report must be reproduced in its entirety.*

Page 1 of 5



## Alpha Analytical Laboratories Inc.

e-mail:  clientservices@alpha-labs.com

Corporate: 208 Mason St., Ukiah, CA 95482 • Phone: (707) 468-0401 • Fax: (707) 468-5267
Bay Area: 6398 Dougherty Rd., Suite 35, Dublin, CA 94568 • Phone: (925) 828-6226  • Fax: (925) 828-6309
Central Valley: 9090 Union Park Way, Suite 113, Elk Grove, CA 95624 • Phone: (916) 686-5190  • Fax: (916) 686-5192

| The McEdwards Group | Project Manager: Don McEdwards | |
|---|---|---|
| 1025 Hearst-Willits Rd | Project: Standard Mineral | Reported: |
| Willits, CA 95490 | Project Number: [none] | 08/11/17 16:25 |

| | Result | Reporting Limit | Dilution | Batch | Prepared | Analyzed | Method | Note |
|---|---|---|---|---|---|---|---|---|
| **1811 Stream (17G2655-01)** | | **Sample Type: Water** | | | **Sampled: 07/28/17 10:45** | | | |
| Metals by EPA 200 Series Methods | | | | | | | | P-02 |
| Calcium | 22 mg/L | 1.0 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | EPA 200.7 | |
| Iron | ND mg/L | 0.10 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | EPA 200.7 | |
| Magnesium | 9.8 mg/L | 1.0 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | EPA 200.7 | |
| Manganese | ND mg/L | 0.020 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | EPA 200.7 | |
| Potassium | 1.3 mg/L | 1.0 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | EPA 200.7 | |
| Sodium | 8.4 mg/L | 1.0 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | EPA 200.7 | |
| Conventional Chemistry Parameters by APHA/EPA Methods | | | | | | | | |
| Bicarbonate | 110 mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Carbonate | ND mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Hardness, Calcium | 55 mg/L | 3 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | SM2340B | |
| Hardness, Magnesium | 37 mg/L | 3 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | SM2340B | |
| pH | 8.02 pH Units | 1.68 | 1 | AH73216 | 07/28/17 16:00 | 07/28/17 17:00 | SM4500-H+ B | T-14 |
| Specific Conductance (EC) | 210 umhos/cm | 20 | 1 | AH73216 | 07/28/17 16:00 | 07/28/17 17:00 | SM2510B | |
| Total Anions | 2.15 meq/l | 1.00 | 1 | AH73258 | 08/03/17 09:29 | 08/10/17 15:52 | SM1030E | |
| Total Cations | 2.24 meq/l | 1.00 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | SM1030E | |
| Total Dissolved Solids | 110 mg/L | 10 | 1 | AH73186 | 08/02/17 08:20 | 08/11/17 10:30 | SM2540C | |
| Turbidity | 0.50 NTU | 0.10 | 1 | AH73216 | 07/28/17 16:00 | 07/28/17 17:00 | SM2130B | |
| Bicarbonate Alkalinity as CaCO3 | 89 mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Carbonate Alkalinity as CaCO3 | ND mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Hydroxide Alkalinity as CaCO3 | ND mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Total Alkalinity as CaCO3 | 89 mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Hardness, Total | 92 mg/L | 5 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:32 | SM2340B | |

*The results in this report apply to the samples analyzed in accordance with the chain of custody document. This analytical report must be reproduced in its entirety.*



## Alpha Analytical Laboratories Inc.

e-mail:  clientservices@alpha-labs.com

Corporate: 208 Mason St., Ukiah, CA 95482 • Phone: (707) 468-0401 • Fax: (707) 468-5267
Bay Area: 6398 Dougherty Rd., Suite 35, Dublin, CA 94568 • Phone: (925) 828-6226 • Fax: (925) 828-6309
Central Valley: 9090 Union Park Way, Suite 113, Elk Grove, CA 95624 • Phone: (916) 686-5190 • Fax: (916) 686-5192

| The McEdwards Group | Project Manager: Don McEdwards | |
|---|---|---|
| 1025 Hearst-Willits Rd | Project: Standard Mineral | |
| Willits, CA 95490 | Project Number: [none] | Reported: 08/11/17 16:25 |

| | Result | Reporting Limit | Dilution | Batch | Prepared | Analyzed | Method | Note |
|---|---|---|---|---|---|---|---|---|
| **1811 Stream (17G2655-01)** | | **Sample Type: Water** | | | | **Sampled: 07/28/17 10:45** | | |
| *Anions by EPA Method 300.0* | | | | | | | | |
| Chloride | 5.5 mg/L | 0.50 | 1 | AG74156 | 07/29/17 01:54 | 07/29/17 01:54 | EPA 300.0 | |
| Fluoride | 0.15 mg/L | 0.10 | 1 | AG74156 | 07/29/17 01:54 | 07/29/17 01:54 | EPA 300.0 | |
| Nitrate as N | ND mg/L | 0.20 | 1 | AG74156 | 07/29/17 01:54 | 07/29/17 01:54 | EPA 300.0 | |
| Sulfate as SO4 | 10 mg/L | 0.50 | 1 | AG74156 | 07/29/17 01:54 | 07/29/17 01:54 | EPA 300.0 | |
| **1811 Well (17G2655-02)** | | **Sample Type: Water** | | | | **Sampled: 07/28/17 10:40** | | P-02 |
| *Metals by EPA 200 Series Methods* | | | | | | | | |
| Calcium | 21 mg/L | 1.0 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | EPA 200.7 | |
| Iron | 3.9 mg/L | 0.10 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | EPA 200.7 | |
| Magnesium | 12 mg/L | 1.0 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | EPA 200.7 | |
| Manganese | 0.44 mg/L | 0.020 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | EPA 200.7 | |
| Potassium | ND mg/L | 1.0 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | EPA 200.7 | |
| Sodium | 14 mg/L | 1.0 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | EPA 200.7 | |
| *Conventional Chemistry Parameters by APHA/EPA Methods* | | | | | | | | |
| Bicarbonate | 130 mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Carbonate | ND mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Hardness, Calcium | 51 mg/L | 3 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | SM2340B | |
| Hardness, Magnesium | 50 mg/L | 3 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | SM2340B | |
| pH | 7.36 pH Units | 1.68 | 1 | AH73216 | 07/28/17 16:00 | 07/28/17 17:00 | SM4500-H+ B | T-14 |
| Specific Conductance (EC) | 240 umhos/cm | 20 | 1 | AH73216 | 07/28/17 16:00 | 07/28/17 17:00 | SM2510B | |
| Total Anions | 2.40 meq/l | 1.00 | 1 | AH73258 | 08/03/17 09:29 | 08/10/17 15:52 | SM1030E | |
| Total Cations | 2.64 meq/l | 1.00 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:52 | SM1030E | |
| Total Dissolved Solids | 140 mg/L | 10 | 1 | AH73186 | 08/02/17 08:20 | 08/11/17 10:30 | SM2540C | |
| Turbidity | 16 NTU | 0.10 | 1 | AH73216 | 07/28/17 16:00 | 07/28/17 17:00 | SM2130B | |
| Bicarbonate Alkalinity as CaCO3 | 100 mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Carbonate Alkalinity as CaCO3 | ND mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Hydroxide Alkalinity as CaCO3 | ND mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Total Alkalinity as CaCO3 | 100 mg/L | 5.0 | 1 | AH73217 | 08/03/17 08:00 | 08/03/17 17:00 | SM2320B | |
| Hardness, Total | 101 mg/L | 5 | 1 | AG74166 | 07/31/17 06:37 | 08/09/17 16:36 | SM2340B | |

*The results in this report apply to the samples analyzed in accordance with the chain of custody document. This analytical report must be reproduced in its entirety.*

Page 3 of 5



## Alpha Analytical Laboratories Inc.

e-mail:  clientservices@alpha-labs.com

Corporate: 208 Mason St., Ukiah, CA 95482 • Phone: (707) 468-0401 • Fax: (707) 468-5267
Bay Area: 6398 Dougherty Rd., Suite 35, Dublin, CA 94568 • Phone: (925) 828-6226  • Fax: (925) 828-6309
Central Valley: 9090 Union Park Way, Suite 113, Elk Grove, CA 95624 • Phone: (916) 686-5190  • Fax: (916) 686-5192

| The McEdwards Group | Project Manager: Don McEdwards | |
|---|---|---|
| 1025 Hearst-Willits Rd | Project: Standard Mineral | Reported: |
| Willits, CA 95490 | Project Number: [none] | 08/11/17 16:25 |

| | Result | Reporting Limit | Dilution | Batch | Prepared | Analyzed | Method | Note |
|---|---|---|---|---|---|---|---|---|
| **1811 Well (17G2655-02)** | | **Sample Type: Water** | | | | **Sampled: 07/28/17 10:40** | | |
| Anions by EPA Method 300.0 | | | | | | | | |
| Chloride | 6.5 mg/L | 0.50 | 1 | AG74156 | 07/29/17 03:32 | 07/29/17 03:32 | EPA 300.0 | |
| Fluoride | 0.13 mg/L | 0.10 | 1 | AG74156 | 07/29/17 03:32 | 07/29/17 03:32 | EPA 300.0 | |
| Nitrate as N | ND mg/L | 0.20 | 1 | AG74156 | 07/29/17 03:32 | 07/29/17 03:32 | EPA 300.0 | |
| Sulfate as SO4 | 7.2 mg/L | 0.50 | 1 | AG74156 | 07/29/17 03:32 | 07/29/17 03:32 | EPA 300.0 | |

*The results in this report apply to the samples analyzed in accordance with the chain of custody document. This analytical report must be reproduced in its entirety.*

Page 4 of 5



## Alpha Analytical Laboratories Inc.

e-mail:  clientservices@alpha-labs.com

Corporate: 208 Mason St., Ukiah, CA 95482 • Phone: (707) 468-0401 • Fax: (707) 468-5267
Bay Area: 6398 Dougherty Rd., Suite 35, Dublin, CA 94568 • Phone: (925) 828-6226 • Fax: (925) 828-6309
Central Valley: 9090 Union Park Way, Suite 113, Elk Grove, CA 95624 • Phone: (916) 686-5190 • Fax: (916) 686-5192

| | |
|---|---|
| The McEdwards Group | Project Manager:  Don McEdwards |
| 1025 Hearst-Willits Rd | Project:  Standard Mineral |
| Willits, CA 95490 | Project Number: [none] |

Reported:
08/11/17 16:25

**Notes and Definitions**

P-02        Sample acidified to pH <2 and allowed to sit 24 hours before further processing.

T-14        Residual chlorine, dissolved oxygen, and pH must be analyzed in the field to meet the EPA specified 15 minute hold time.

ND          Analyte NOT DETECTED at or above the reporting limit

dry          Sample results reported on a dry weight basis

RPD        Relative Percent Difference

*The results in this report apply to the samples analyzed in accordance with the chain of custody document. This analytical report must be reproduced in its entirety.*

# Chain of Custody – Work Order

Alpha Analytical Laboratories Inc.
www.alpha-labs.com
Ukiah, Stockton, Sonora

Corporate Laboratory
208 Mason Street, Ukiah CA 95482
707-468-0401 F) 707-468-5267
Email: clientservices@alpha-labs.com

ELAP Certifications
Ukiah 1551 / Dublin 2728 / Elk Grove

Bay Area Laboratory
6398 Dougherty Rd #05, Dublin CA 94568
925-828-9228 F) 925-828-5309

Central Valley Laboratory
9090 Union Park Way #113, Elk Grove CA 95624
916-686-5100 F) 916-686-5102

Report to: Alpha MC $558.00

Lab No. 1762655    Pg ___ of ___

Reports and invoices delivered by email in PDF format

| Company/Client Name: THE MCEDWARDS GROUP | Invoice to (if different) | Contact: DONS MCEDWARDS AKAS | Project Information | Project ID: | Analysis Request |
|---|---|---|---|---|---|

Address:
1025 HEWLET ROAD
WILLITS, CA 95490

Phone/Fax: 707 854-4618

Email Address: themcedwardsgroup@gorumcast.net

Field Sampler - Printed Name & Signature:
DONS G. MCEDWARDS
Arnold J. McEdwards

Signature below authorizes work under terms stated on reverse side.

STANDARD MINIMAL

| Sample Identification (Ex: Well Head, Kitchen Sink) | Sampling Date | Time | 40ml Vial | Poly | Glass | Sleeve | Other | HCl | HNO3 | H2SO4 | Other | None | Other | Water | Soil | Other | Total Number of Containers | | | | | | | | | | Sample Notes or CDPH Source Numbers: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1811 STREAM | 7/25/17 | 1015 | | | | | | | | | | | | | | | ✓ | | | | | | | | | | |
| 1811 WELL | 7/25/17 | 1040 | | | | | | | | | | | | | | | ✓ | | | | | | | | | | |

TAT
Standard 10 days ○
RUSH:
5 days ○
Lab preapproval required
48 hours ○
Other: ___ days ○

Temp upon Receipt °C
Ukiah temp: 9.6
Dublin temp:
Elk Grove temp:

| Relinquished by: Arnold J. McEdwards | Received by: | Date 7/27/17 | Time 1115 |
|---|---|---|---|

CDPH Write On EDT Transmission?   ○ Yes  ○ No
State System Number:
If "Y" please enter the Source Number(s) in the column above

CA Geotracker EDF Report?   ○ Yes  ○ No
Global ID:
EDF to (Email Address):
Travel and Site Time:    Mileage:    Sampling Company Log Code:    Misc. Supplies:

## Standard Mineral

The following numbers are what the state recommends as maximum for drinking water. These are meant to give you a guideline only.

| Analysis | State recommends |
|---|---|
| Bicarbonate | Not regulated by state |
| Carbonate | Not regulated by state |
| Chloride | 250 mg/L |
| Specific Conductance | Acceptable.......... 0 – 800 micromhos<br>High in dissolved.. Over 800 micromhos<br>minerals |
| Fluoride | 1.4 mg/L |
| Nitrate as N | 10 mg/L |
| pH | Acid............... Under 6.5<br>Slightly Acid..... 6.5 to 6.9<br>Neutral........... 7.0<br>Slightly Alkaline 7.1 to 8.0<br>Alkaline.......... Over 8.0 |
| Sulfate | 250 mg/L |
| Total Dissolved Solids | Acceptable.......... 0 – 500 mg/L<br>High in dissolved.. Over 500 mg/L<br>Minerals |
| Alkalinity | No recommended number |
| Turbidity | No recommended number |
| Calcium | No recommended number |
| Iron | EPA suggests a maximum of 0.3 mg/L for Public water systems |
| Hardness | Soft............... 0 – 50 mg/L<br>Medium.......... 50 – 100 mg/L<br>Hard.............. 100 – 200 mg/L<br>Very Hard........ Over 200 mg/L |
| Potassium | No recommended number |
| Magnesium | No recommended number |
| Sodium | No official guidelines. Heart Association Suggests a maximum of 20 mg/L for People on sodium restricted diets. |

# THE McEDWARDS GROUP

1025 Hearst Willits Road
Willits, CA 95490
License #743428

Phone: (707) 354-4618

Fax: (707) 459-1084

RESUME
DONALD G. McEDWARDS
Principal Hydrogeologist/Engineer

## EXPERIENCE SUMMARY

Dr. McEdwards has extensive experience in ground-water supply and ground-water quality investigations including site characterizations, water supply well sitting, monitoring well design and installation, aquifer characterization, ground-water flow and contaminant transport modeling, and design and permitting of site remediation programs. He has managed projects involving assessing the extent of contamination; remediating soil and ground-water contamination by excavation, soil vacuum extraction, air sparging, groundwater containment by extraction, and inground bioremediation; verification monitoring; and site closure. He also has experience in surface water hydrology investigations, design of drainage facilities, mitigation of debris flow damage, and cost allocation of multi-source contaminant plumes. He has provided expertise in support of attorneys involved in litigating soil and groundwater contamination issues.

| | |
|---|---|
| **EDUCATION** | University of California, Berkeley |
| | Ph.D., Engineering Science, 1979 |
| | M.S., Engineering Science, 1973 |
| | |
| | California State University, Northridge |
| | B.S., Geology, 1972 |
| **REGISTRATION & LICENSES** (California) | Registered Geologist No. 3872 |
| | Certified Engineering Geologist No. 1208 |
| | Registered Civil Engineer No. 28088 |
| | Certified Hydrogeologist No. 153 |
| | Class A General Engineering Contractor (#743428) |
| | Hazardous Materials Certification |
| | Asbestos Abatement Certification |

## HAZARDOUS WASTE TRAINING

Forty-hour course following EPA requirements. Included training in physical, chemical, and toxicological properties of hazardous materials; hazard evaluation and control; selection and use of personal protective equipment, including self-contained breathing apparatus and fully encapsulating suits; sampling and monitoring techniques and equipment; and site entrance and decontamination procedures.

## EXPERIENCE

| | |
|---|---|
| 1995 – Present | The McEdwards Group, Willits, CA |
| | Principal Hydrogeologist |
| 1988 – 1995 | Trans Tech Consultants, Santa Rosa, CA |
| | Principal Hydrogeologist |
| 1985 – 1987 | Geohydrologic Services, Petaluma, CA |
| | Principal Engineer/Geologist |
| 1984 – 1985 | TERA Corporation, Berkeley, CA |
| | Senior Project Hydrogeologist |

Donald G. McEdwards-Resume

| 1979 - 1984 | Harding Lawson & Associates, Novato, CA<br>Associate Engineer |
| 1977 - 1979 | Lawrence Berkeley Laboratory, Earth Sciences Division<br>Berkeley, CA<br>Staff Scientist II |
| 1975 - 1977 | Lee and Praszker, San Francisco, CA<br>Senior Engineering Aide, University of California<br>and Staff Engineer |

## REPRESENTATIVE PROJECTS

### 2260 ORDINANCE ROAD - Santa Rosa, CA

Installed six monitoring well to define the extent of gasoline and diesel contamination.  Conducted well tests using the wells and found the shallow aquifer to be moderately permeable and amenable to biodegradation.  Using the well test data and proprietary computer programs, the flow rates, ground-water flow lines, and capture areas were calculated for an in-situ bioremediation program.  Developed a remediation plan to extract clean water from perimeter wells, amend the water with nutrients and oxygen to promote bacterial growth, and inject the water into the tank excavation where the fuel leak occurred.  The system was operated for a period of seven months, during which time the concentration of contaminants decreased from free floating product to laboratory reporting limits.

### 5580 ST. HELENA ROAD - Santa Rosa, CA

Directed excavation of a septic tank contaminated with diesel fuel (delivery of diesel was made directly into the septic tank).  Directed bioremediation of the tank contents to allow disposal as conventional septage.  Managed investigation to determine extent of diesel contamination.  Prepared and implemented an insitu bioremediation plan involving circulating amended water through the zone of contamination in a closed loop between injection and extraction trenches.

### 128 KENTUCKY STREET - Petaluma, CA

Managed excavation of diesel contaminated soil to 14 feet deep in area bounded an historic three-story building, a city vehicular right of way, a four-story building, and a pedestrian alley.  To support the adjacent buildings and pavement, a series of cast-in-place concrete piles with cross bracing were installed on the perimeter of the excavation area.  Oversaw preparation of structural drawings, obtained the necessary building permits, prepared contractor bid specifications, oversaw work of the excavation contractor, and arranged for disposal of excavated soil.  Confirmation samples indicated that all contaminated soil was removed.

### Harris Quarry, Willits, CA

Designed retention structure to accommodate storm water from a 20 year, 1 hour precipitation event for a hard rock quarry in Willits.  Made use of the Intensity, Duration, and Frequency Curve Programs provided by the Office of Project Planning and Design, Department of Transportation, State of California.  Represented quarry owners before the Sonoma County Planning Commission.  Quarry permit to operate was approved.

### GROUND-WATER CONTAMINATION STUDY - Livermore, CA

Assisted in the interpretation of hydrologic and chemical data from over 130 wells completed to depths ranging from 70 to 140 feet.  Directed and analyzed well tests for newly installed wells.  Directed abandonment of water supply wells that were cross-contaminating several aquifers.

Donald G. McEdwards-Resume

SURFACE WATER RUNOFF AND DEBRIS FLOW CHARACTERIZATION - San Rafael,CA
Evaluated probable frequency and volumes of debris flows and developed 100 year, 24 hour storm runoff for sizing debris catch basins for a residential development. Compared Soil Conservation Service Method with Rational Method and compared rain fall intensity data developed by USGS with rain fall intensity data used by CALTRANS.

PCB CONTAMINATION/GROUND WATER STUDY - Cloverdale, CA
Defined site stratigraphy and hydrogeology by installing borings and monitoring wells, conducting and interpreting pump tests and slug tests, and measuring ground-water levels. Characterized ground-water flow and contaminant migration. Prepared remedial action plan for submission to the California Regional Water Quality Control Board.

REMEDIAL ACTION DESIGN - Sonoma County, CA
Remedial Action Design, Sonoma County California. Developed flow model to calculate extraction well sweep areas for choosing optimum well placement and pumping rates for contaminated water removal at a wood treatment plant.

NUMERICAL SIMULATION STUDY - Santa Clara County, CA
Evaluated alternative ground-water extraction schemes and wrote final report for removal of chemical-laden ground water at a large industrial site in San Jose. The study involved simulating ground-water flow and chemical transport within a large ground-water basin and providing quantitative comparisons of alternative extraction schemes.

GROUND-WATER PROTECTION PLAN - Santa Clara County, CA
Defined stratigraphy and hydrogeology of site by installing monitoring wells, geophysically logging test borings and wells, conducting aquifer tests, and interpreting aquifer tests.

REMEDIAL ACTION MODELING/EXTRACTION WELL DESIGN - Point Molate, CA
Developed steady state model of ground-water flow around various structures for use in designing an extraction well system for petroleum-contaminated ground water at a U.S. Navy Fuel Depot.

AQUIFER CHARACTERIZATION - Bethel, AK
Managed field demonstration and wrote aquifer characterization plan for aquifer thermal energy storage demonstration project. Designed wells and well field, pressure and temperature instrumentation, well logging and well testing program, and laboratory testing program.

WATER RESOURCES STUDY, WATER RESOURCES DEPARTMENT - Diego Garcia
Analyzed precipitation data, soil hydraulic conductivity, and depth to fresh water-sea water mixing zone to recommend safe yield flow rate for wells supplying water for fire protection.

GROUND WATER RESOURCES DEVELOPMENT - Bridgeport, CA
Sited, logged, and pump-tested exploratory water well for U.S. Marine Corps Training Camp.

GEOTHERMAL WELL PRODUCTION AND INTERFERENCE TESTING - Imperial Valley, CA
Analyzed observation well pressure changes caused by several production wells flowing at various rates. Determined global values of aquifer transmissivity and storativity.

CITY WATER WELL SITING - Rio Vista, CA
Conducted well interference tests on three city wells to locate a new city water well.

IT BENICIA LANDFILL E.I.R. - Benicia, CA
Developed analytical precipitation-ground-water discharge balance model to estimate the effective permeability of the native soils.

Donald G. McEdwards-Resume

<u>GROUND-WATER CONTROL SYSTEM - Bakersfield, CA</u>
Designed ground-water control system drainage blanket for drilling waste landfill.

<u>GEOLOGICAL HAZARDS STUDY - Contra Costa County, CA</u>
Conducted geological hazards study and capacity analysis for proposal sanitary landfill.

<u>WELL TEST PROGRAM - Russian River, CA</u>
Designed well test program to determine effective yield of proposed water supply wells sited in the channel.

<u>EAST MESA GEOTHERMAL FIELD - Imperial Valley, CA</u>
Conducted and analyzed several well production and interference tests at the field.

<u>STRIPA MINE - Stora, Sweden</u>
In support of nuclear storage studies,  designed and assembled uphole instrumentation system to measure flow rate and pressures of double packer borehole injection tests in fractured granite.

<u>Miscellaneous Projects</u>
Wrote multiple-well variable-flow-rate well test analysis programs ANALYZE and PANAL.  ANALYZE treats completely penetrating wells in isotropic confined aquifer; PANAL treats partially completed or limited-entry wells in anisotropic confined aquifer.

Conducted numerous fuel release site investigations and remediations involving drilling test borings, and installing, developing, and sampling monitoring wells.

Analyzed hydrologic well test data and wrote User's Guides to two computer programs:  A well test analysis program (ANALYZE) and a two-phase geothermal reservoir simulation program (SHAFT 79).

Reviewed International Atomic Energy Commission draft document SG-S7 entitled "Nuclear Power Plant Siting - Hydrogeological Aspects" and provided extensive corrections and comments.

## PUBLICATIONS

1976    Results of interference tests from two geothermal reservoirs. LBL-4484, SPE-6052, August 1976 (with T. N. Narasimhan and P. A. Witherspoon).

1976    Analysis of well tests with variable discharge.  Presented at Geothermal Reservoir Engineering Workshop, Stanford University, Stanford, California, December 1976 (with C. F. Tsang).

1977    Results of reservoir evaluation tests, 1976 East Mesa Geothermal Field, California.
LBL-6364, July 1977 (with T. N. Narasimhan).

1977    Variable flow well test analysis by a computer assisted matching procedure.  LBL-5994,
SPE-6547, April 1977 (with C. F. Tsang, T. N. Narasimhan, and P. A. Witherspoon).

1977    Variable-rate multiple-well testing analysis. LBL-7027, Proc., Invitational Well Test Symposium, October 19-21, 1977, Berkeley, California (with C. F. Tsang).

1977    Recent results from tests on the Republic geothermal wells, East Mesa, California.
LBL-7017, December 1977 (with T. N. Narasimhan, R. C. Schroeder, C. G. Goranson,
D. A. Campbell, and J. H. Barkman).

Donald G. McEdwards-Resume

| | |
|---|---|
| 1978 | Results of two injection tests at the East Mesa KGRA. Proc., Second Invitational Well Test Symposium, 1978, Berkeley, California (with S. Benson). |
| 1978 | Geothermal resource and reservoir investigations of U.S. Bureau of Reclamation leaseholds at East Mesa, Imperial Valley, California. LBL-7094, October 1978 (Section 3 and Appendixes A, B, and C, with S. Benson). |
| 1979 | Multiwell variable rate well test analysis. Ph.D. dissertation, University of California, Berkeley, California. |
| 1979 | Multiwell variable rate well test analysis. SPE-8293, presented at the 54th Annual Conference in Las Vegas, Nevada, September 23-26, 1979. |
| 1979 | Multiple well variable rate well test analysis of data from the Auburn Thermal Energy Storage Program. LBL-10194, November 1979. |
| 1981 | User's Manual for ANALYZE - A variable-rate multiple-well least squares matching routine for well test analysis. LBL-10907, July 1981 (with S. Benson). |
| 1984 | Quantitative Comparison of Simulated Aquifer Restoration Schemes. Proc., National Water Well Association Conference on Practical Applications of Ground Water Models, August 15-17, 1984, Columbus, Ohio. |
| 1988-1991 | Computer programs CAPTURE, MATCH2, and MATCH3. |

CAPTURE - Plots flow paths and travel times of ground-water particles to display the areal extent of ground-water capture at specified times.

MATCH2 - Performs a least-squares fit of observed and calculated water level elevations to find values of aquifer permeability, thickness, and storage, and the elevation, gradient, and flow direction of the prepumping piezometric surface.

MATCH3 - Performs a least-squares fit of observed and calculated chemical concentrations to find values of aquifer dispersivities, chemical source concentration and dimensions, and ground-water velocity.

| | |
|---|---|
| 2006 | Patent for Rotapump, a surface mounted groundwater purging and sampling pump for use in small diameter monitoring wells (www.rotapump.com). |

# Exhibit D

### Agreement Not to Resume Cannabis Cultivation

This Agreement Not to Resume Cannabis Cultivation ("Agreement") is entered into by and between Mendocino County ("County") and Ann Marie Borges ("Borges") on November 01, 2017 ("Effective Date") to satisfy Mendocino County Code section 10A.17.080(e).

### Recitals

WHEREAS, Borges previously cultivated cannabis on the real property commonly known as 26500 Reynolds Highway in Willits, California ("Original Site");

WHEREAS, Borges submitted an application to cultivate cannabis at 1181 Boonville Road in Mendocino County in 2017 ("Destination Site");

WHEREAS, all of Borges' cannabis cultivation activities at the Original Site have permanently ceased and the Original Site was restored by: (i) removing all equipment and trash or debris related to cannabis cultivation and restoring the relevant portion of the Original Site as is shown in the image attached hereto **Exhibit A**. No dams, ponds or streams were used in cannabis cultivation and no vegetation was removed because the cannabis was cultivated in pots;

WHEREAS, Borges and the County enter into this Agreement to satisfy Mendocino County Code section 10A.17.081(e).

### Agreement

WHEREFORE, the County and Borges agree as follows:

1.  <u>Release of Right to Cultivate Cannabis at the Original Site</u>.  In consideration of obtaining a permit to cultivate cannabis at the Destination Site, Borges agrees to permanently relinquish any and all rights she may have to cultivate cannabis at the Original Site.

2.  <u>Prohibition on Cultivation at the Original Site</u>.  By entering into this Agreement, Borges acknowledges and agrees that she is permanently prohibited from cultivating cannabis on the real property commonly known as 26500 Reynolds Highway.

3.  <u>Transfer of Cultivation Ability</u>.  The County authorizes the transfer of Borges' ability to cultivate on the Original Site to the Destination Site.  This transfer permanently extinguishes Borges' ability to claim proof of prior cultivation at the Original Site.

4.  <u>Incorporation of Recitals</u>.  The recitals set forth above are true and correct and are incorporated by this reference.

5.  <u>Incorporation of Exhibits</u>.  All exhibits to this Agreement are incorporated as if fully set forth herein by this reference.

1

6.      Modification.  Any modifications to this Agreement must be written and signed by every party to the Agreement.

7.      Nontransferrabilty.  This Agreement does not run with the land and may not be transferred or assigned.

DATED:                                 MENDOCINO COUNTY

_____                _____

                                       By:

                                       Its:

DATED:                                 ANN MARIE BORGES

10/31/17                               _____
                                       Ann Marie Borges

2

# Exhibit E

COMPLAINT RECEIVED

The Enforcement Division of the Fair Political Practices Commission received the enclosed complaint, COM-11212017-02271, on 11/21/2017 7:58:00 AM. The information filed in the complaint is below and any attachments filed will be included.

The Complainant is:
Chris Gurr

The Complaint was formally filed against:
Sue Anzilotti

The following individuals were listed as Witnesses:
Ann Marie Borges

Dan Hamburg

Diane Curry

Audie Haggard

The Violations alleged are:
Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Unauthorized access and use of private information taken from a Department of Agriculture Medical Cannabis permit. Information was shared with the public and used against us in an attempt to keep us from getting our medical cannabis permit.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Using her government position to influence decisions that would personally benefit her such as prohibiting us from getting our medical cannabis permit.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Conducting private business on government time using Mendocino County government resources such as computers, email servers, telephone, etc. Instead of conducting her personal business on her personal time she conducting personal business on government time wasting taxpayer money.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Violation of HIPAA (Health Insurance Portability and Accountability Act). Sue shared confidential medical information with our neighbors that was taken from our private medical cannabis application with the Department of Agriculture.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Using her contacts within the Sheriff's Office as well as external State agencies such as CFWA (California Fish & Wildlife) and SWRCB (State Waterboard Resources Control Board) to ask for special favors to get us investigated and our permit denied.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Ran background checks on friends and family members that visited us. Sue and other neighbors took pictures of any cars that were on our property and ran the license plate numbers through the Sheriff's office computer tracking system.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Sue used Sheriff's email server to conduct private business in an attempt to keep us from getting our medical cannabis permit. She regularly communicated with Leuitenant Steve White of CFWA who was the supervisor in charge of the illegal raid conducted on our property August 10, 2017. Sue also regularly communicated with the Dept of AG, Building and Planning Dept, and Code Enforcement using the governments email server to conduct private business and find out the status of our permit being denied.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Sue regularly attended Board of Supervisors meeting during the middle of the day while she was suppose to be working in the Sheriff's office. She made several 3 minute speeches stating falsehoods about me (character assasination) which are public record.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Sue refused to perform our Live Scan fingerprints when we went to the Sheriff's office which is a requirement to get our medical cannabis permit. There were approximately 15 people in the waiting room to be fingerprinted and she did everybody but us. Again using her government position to discriminate against us and attempt to make it difficult to get our medical cannabis permit.*

Conflict of Interest
87306.5 - Conflict of Interest Code; Local

*Prior to knowing that we were enrolling in the medical cannabis permit program, she told us that she withheld the zip tie discount to Medical applicants because she hated cannabis growers. Another example of discrimination and anti-cannabis bias.*



STATE OF CALIFORNIA
FAIR POLITICAL PRACTICES COMMISSION
1102 Q Street • Suite 3000 • Sacramento, CA 95811

November 22, 2017

Chris Gurr
via email at: gurr.chris@gmail.com

RE:   FPPC File No. 17/1399; Sue Anzilotti

Dear Mr. Gurr:

This letter is to notify you that the Enforcement Division of the Fair Political Practices
Commission will investigate the allegation(s), under the jurisdiction of the Commission,
of the sworn complaint you submitted in the above-referenced matter.  You will next
receive notification from us upon final disposition of the case.  However, please be
advised that at this time we have not made any determination about the validity of the
allegation(s) you have made or about the culpability, if any, of the person(s) you identify
in your complaint.

Thank you for taking the time to bring this matter to our attention.

Sincerely,

*GWest*

Galena West, Chief
Enforcement Division

GW/ch
cc:   Ms. Sue Anzilotti
        via email at: anzilots@co.mendocino.ca.us

# Exhibit F



**cdfa** CALIFORNIA DEPARTMENT OF FOOD & AGRICULTURE

*California Department of Food and Agriculture*
*1220 N Street*
*Sacramento, CA 95814*

## TEMPORARY CANNABIS CULTIVATION LICENSE

**Legal Business Name:**
Goose Head Valley Management, LLC

**Premises APN:**
Mendocino County - 18519212

**Premises Address:**
1181 Boonville Rd.
Ukiah, CA 95482

**Valid:**
01/23/2018 to 3/23/2019

**License Number:**
TML17-0001229

**License Type:**
Temporary-Small Mixed-Light Tier 2

---- NON-TRANSFERABLE ----                    ---- POST IN PUBLIC VIEW ----

# Exhibit G

**Harinder Grewal**
Agricultural Commissioner
Sealer of Weights and Measures



PHONE (707) 234-6830
FAX (707) 463-0240
agcomm@mendocinocounty.org
www.mendocinocounty.org/ag

**COUNTY OF MENDOCINO**
DEPARTMENT OF AGRICULTURE
890 N. Bush Street
Ukiah, CA 95482

July 9, 2018

Chris Gurr
Ann Marie Borges
1181 Boonville Rd
Ukiah, CA 95482

Mr. Gurr and Ms. Borges,

This letter is to inform you that your application to cultivate cannabis (AG_2017-0069) at the above location (also known as Accessor Parcel Number 185-192-12-00) is being denied based on non-compliance with Chapter 10A.17's proof of prior cultivation requirement.

Proof of prior cultivation, as provided for by section 10A.17.080, paragraph (B) (1), has two primary elements: evidence of cultivation activities that existed on the legal parcel prior to January 1, 2016, and evidence of cultivation activities that currently exist on the legal parcel. The evidence of prior and current cultivation activities is to be provided for the same legal parcel.

This requirement is further explained on the County's cannabis cultivation website in the Frequently Asked Questions page (https://www.mendocinocounty.org/business/cannabis-permits-and-licenses/cannabis-cultivation-faq). Since July 2017, it has stated that in order to show proof of prior cultivation, a cultivator must show that the current cultivation activities and the cultivation activities prior to January 1, 2016, took place on the same legal parcel. The same Frequently Asked Questions page referenced above clarifies that when establishing proof of prior cultivation, the cultivation activities before and after January 1, 2016, must be the same legal parcel, and that parcel will become the origin site for purposes of relocation.

Proof of prior cultivation provided to the Department of Agriculture for your permit application does not include evidence of cultivation activities on the same legal parcel for both current cultivation and cultivation prior to January 1, 2016. Instead, the proof of prior cultivation worksheet on file with the Department refers to a property near Willits and states that photographic evidence from 1986-1987 was reviewed by the Department. However, current cultivation activities are occurring at a property near the Ukiah area located on Boonville Road, and it is the Department's understanding that you have not had cultivation activities at the Willits area property for many years. The proof of prior cultivation evidence provided for your application does not conform to the requirements of paragraph (B) (1) of section 10A.17.080, because the prior and current cultivation activities are not occurring on the same parcel.

As result of the denial of your cultivation permit application, you are prohibited from cultivating cannabis on your parcels in excess of the limitations of paragraph (B) or (C) of section 10A.17.030 of the Mendocino County Code.

Should you have any questions regarding this denial, please contact our office.

Harinder Grewal Ph.D., MBA
Agricultural Commissioner/Sealer,
County of Mendocino,
Department of Agriculture/Weights & Measures

ec:   Chris Gurr, Ann Marie Borges
      Applicants
      gurr.chris@gmail.com, borges.ann@gmail.com

      Wykowski & Associates
      hgw@wykowskilaw.com, rdj@wykowskilaw.com

      Harinder Grewal, Matthew Kiedrowski, Chevon Holmes
      County of Mendocino
      grewalh@mendocinocounty.org
      kiedrowskim@mendocinocounty.org
      holmesc@mendocinocounty.org