1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    ANN MARIE BORGES, *et al*.,            Case No. 20-cv-04537-SI

8                    Plaintiffs,

9            v.                             **ORDER GRANTING IN PART AND
                                            DENYING IN PART DEFENDANTS'
                                            MOTIONS TO DISMISS FIRST
10   COUNTY OF MENDOCINO, *et al*.,         AMENDED COMPLAINT**

11                   Defendants.            Re: Dkt. Nos. 33, 34

12

13           Defendants' motions to dismiss the first amended complaint were scheduled for a hearing

14   on December 11, 2020. Pursuant to Civil Local Rule 7-1(b), the Court determined that these matters

15   are appropriate for resolution without oral argument and VACATED the hearing. For the reasons

16   set forth below, the motions are GRANTED IN PART and DENIED IN PART. The first cause of

17   action may proceed; the second cause of action is dismissed with leave to amend; the third and

18   fourth causes of action are dismissed without leave to amend. If plaintiffs wish to amend the second

19   cause of action, they may file an amended complaint no later than **December 23, 2020**.

20

21                            **BACKGROUND**

22   **I.    Factual Background**

23           The following facts are drawn from plaintiffs' First Amended Complaint ("FAC"), which

24   the Court treats as true for the purposes of these motions to dismiss. In August of 2016, plaintiffs

25   Ann Marie Borges and Chris Gurr purchased an eleven-acre farm zoned AG/40 agricultural use in

26   Ukiah, California. FAC ¶¶ 3, 12. Plaintiffs intended to cultivate medical cannabis on their property,

27   and in 2017 plaintiffs formed a business called Goose Head Valley Farms for that purpose. *Id.* ¶¶ 4,

28   11-12.

United States District Court
Northern District of California

1    In April 2017, the County of Mendocino adopted the Medical Cannabis Cultivation

2    Ordinance, Ordinance No. 4381, Ch. 20.242, which contains the County's cannabis cultivation

3    regulations.[1]  In May 2017, plaintiffs applied for a permit under Mendocino County Code ("MCC")

4    10A.17.080(B)(3), which governs "relocation."  That subsection provides, *inter alia*, "Persons able

5    to show proof of prior cultivation pursuant to paragraph (B)(1) above may apply for a Permit not on

6    the site previously cultivated (the 'origin site') but on a different legal parcel (the 'destination site'),

7    subject to the following requirements. . . ."[2]  Plaintiffs' application was conditionally approved by

8

9        [1]  The Court takes judicial notice of the various versions of the ordinance submitted by
10   defendants.  *See* Dkt. No. 34-1.  The Court does not take judicial notice of the other materials
     submitted by defendants as the Court does not rely on those materials in resolving the current
11   motions.

12       [2] Paragraph (B)(1) provides:

13   (1) Proof of Prior Cultivation. Persons applying for a Permit during Phase One shall
     be required to provide to the Agricultural Commissioner evidence that they were
14   cultivating cannabis on the cultivation site prior to January 1, 2016, which cultivation
     site shall have been in compliance with the provisions of section 10A.17.040.
15   Evidence shall include:

16       (a)  Photographs of any cultivation activities that existed on the legal parcel
     prior to January 1, 2016, including: (i) ground level views of the cultivation activities
17   and (ii) aerial views from Google Earth, Bing Maps, Terraserver, or a comparable
     service showing: both the entire legal parcel and the cultivation site in more detail.
18   The date these images were captured shall be noted.

19       (b) Photographs of any cultivation activities that currently exist on the legal
     parcel, including: (i) ground level views of the cultivation activities and (ii) aerial
20   views from Google Earth, Bing Maps, Terraserver, or a comparable service showing:
     both the entire legal parcel and the cultivation site in more detail. The date these
21   images were captured shall be noted.

22       (c) At least one additional document demonstrating cultivation on the legal
     parcel prior to January 1, 2016, which evidence may be used to substitute for
23   evidence pursuant to clause (a). The Agricultural Commissioner shall prepare a list
     of the types of documentation that will be accepted to meet this requirement, and
24   may accept other similarly reliable documentary evidence showing that cannabis was
     cultivated for medical use prior to January 1, 2016.

25       (d) Proof of prior cultivation shall be assigned to the applicant relative to their
26   prior cultivation site.

27       (e) Persons who participated in a permit program pursuant to the County's
     Chapter 9.31 in previous years may present evidence of such participation and
28   payment of all required fees in order to provide proof of prior cultivation.

then-Interim Commissioner of Agriculture Diane Curry, and plaintiffs were given a temporary permit under which they had authorization to begin cultivation activities. FAC ¶¶ 14-15. Plaintiffs began cultivating marijuana on the property. *Id*.

The FAC alleges that "[d]uring 2017 and prior to her resignation in March 2018, Commissioner Curry was given broad discretion as the final decisionmaker for the County of Mendocino to implement the new ordinance allowing qualified applicants to receive permits to cultivate cannabis in the County[,]" and that "[d]uring that time, Commissioner Curry approved permits for numerous (B)(3) applicants, including but not limited to the plaintiffs, to immediately cultivate cannabis on relocation sites in the County so long as the relocation site met zoning requirements." *Id.* ¶ 16.

Beginning in June 2017, defendant Sue Anzilotti, who is plaintiffs' neighbor, contacted Steve White of the California Department of Fish and Wildlife ("CDFW") on behalf of "concerned homeowners" who lived adjacent to plaintiffs' property. *Id.* ¶ 17. Anzilotti "made false allegations that the water source for Plaintiffs' approved cultivation site was not approved for use in commercial cultivation operations." *Id*. White "decided to use a false allegation of water diversion as a pretext to obtain a warrant and seize the plaintiffs' property." *Id*.

In July 2017, Commissioner Curry contacted CDFW agents and requested a meeting with them on plaintiffs' property to better understand the requirements relating to creeks located near cannabis farms. *Id.* ¶ 18. Plaintiffs allege that on July 25, 2017, two CDFW agents went to plaintiffs' property without prior notice, and "[w]ithout performing any tests, they concluded it was likely water was being diverted from the creek and sent a letter to Commissioner Curry stating that they suspected water diversion." *Id*.

On or about July 26, 2017, plaintiffs hired Donald G. McEdwards, a hydrologist, to perform an extensive hydrology study at the property. *Id*. ¶ 19.

On August 10, 2017, "a convoy of CDFW vehicles arrived at Plaintiffs' property and agents, with guns pointed, immediately placed the Plaintiffs in handcuffs." *Id*. ¶ 20. Plaintiffs informed Steve White, the CDFW team leader, that they had a permit application receipt from the County and that they were in full compliance with all County regulations. *Id*. They also informed White that

3

they were waiting for the results of the hydrology report.  *Id.*  "The CDFW team, without any evidence, claimed they believed the water was being diverted from the nearby creek and proceeded to cut down and eradicate marijuana, *i.e.*, 100 plants growing indoors under a hoop and 171 plants growing outdoors in an approved location of 10,000 square feet."  *Id.*  During the search, defendant CDFW agent Mason Hemphill searched plaintiffs' home and property and confiscated numerous items, including over 200 living marijuana plants.  *Id.* ¶ 21.

Plaintiffs received the results of the water tests on August 13, and those results showed that "the water in the well is distinct from the water in the creek."  *Id.* ¶ 28.

On or about August 14, 2017, plaintiff Ann Marie Borges provided Commissioner Curry with proof of "prior cultivation from the town of Willits in Mendocino County, an area not in the coastal zone."  *Id.* ¶ 29.[3]  On or about September 16, 2017, Commissioner Curry notified plaintiffs their amended application had been finally approved.  *Id.* ¶ 30.  On September 19, 2017, plaintiffs went to Commissioner Curry's office to pick up the permit, but "[t]he anticipated handoff was prevented by Deputy County Counsel Matthew Kiedrowski . . . [who] informed plaintiffs that they needed to provide additional proof that the site of prior cultivation in Willits was no longer able to resume cannabis cultivation."  *Id.*  No other reason was given for being denied a permit.  *Id.*  Plaintiffs hired a local land use attorney, and on or about October 31, 2017, plaintiffs' attorney submitted to the Deputy County Counsel a signed agreement not to resume cannabis cultivation at the Willits site.

Beginning in November 2017, Anzilotti "colluded with her neighbors and conspired with defendants John McCowen, Carre Brown and Georgeanne Croskey to cause the County to create an 'opt-out' zone that would change the County zoning plan.  It was intended to target the Plaintiffs and preclude them from cultivating cannabis on their property."  *Id.* ¶ 31.  In January 2018, the County initiated a "sham process" to create opt-in and opt-out zones in the County regarding the cultivation of cannabis.  *Id.*  County officials intentionally excluded plaintiff Chris Gurr from participating in that process.  *Id.*  "This unprecedented political experiment gave a right to plaintiffs'

---

[3]  Plaintiffs initially identified a coastal location as the "origin site" to satisfy the "proof of prior cultivation" requirement of the ordinance.  *See* Compl. ¶ 13.

United States District Court
Northern District of California

neighbors to decide whether to 'opt-out' of the zoning plan and thus prevent plaintiffs from exercising their right to cultivate cannabis on their property." *Id*. ¶ 48.

On November 22, 2017, plaintiff Chris Gurr made a formal complaint against Anzilotti to the Enforcement Division of the Fair Political Practices Commission. *Id*. ¶ 32. "The allegations centered on Sue Anzilotti's use of her position as an unsworn administrator with the Sheriff's Office to obtain access to private information, including illegal[] background checks, and misuse of her government position to conduct personal business to influence decisions by County officials and employees that would personally benefit her." *Id*.

On January 23, 2018, plaintiffs received a Temporary Cannabis Cultivation License from the California Department of Agriculture. *Id*. ¶ 33. The license was issued "following a close examination and inspection of the Plaintiffs' property and water supply by the CDFW, the State Water Resources Control Board, and the State Department of Food and Agriculture." *Id*.

In March 2018, Diane Curry left her position as Interim Commissioner of the Department of Agriculture for Mendocino County. *Id*. ¶ 34.

On July 9, 2018, the County of Mendocino Department of Agriculture notified plaintiffs that their application to cultivate medical cannabis had been denied because they did not provide evidence of prior and current cultivation on the same parcel as required by Ordinance 10A.17.080 paragraph (B)(1). *Id*. ¶ 35. Plaintiffs allege the permit denial was based on "a false and fraudulent premise" because plaintiffs did not apply for a medical cannabis permit pursuant to paragraph (B)(1) of the County Ordinance, and instead submitted their application pursuant to paragraph (B)(3) of the Ordinance. *Id*. Plaintiffs allege that they met all of the (B)(3) requirements as determined by Commissioner Curry in May and September of 2017. *Id*. Plaintiffs also allege that they are "the only AG40 applicants who complied with all (B)(3) requirements, as determined by Commissioner Curry as the final decisionmaker for the County, but were later informed their application had been denied." *Id.*

On December 4, 2018, the Mendocino County Board of Supervisors passed Ordinance No. 4420, which amended the Mendocino Cannabis Cultivation Ordinance to, *inter alia*, rezone two districts to "CP Commercial Cannabis Prohibition Combining District." *Id*. ¶¶ 48-49 & Ex. H to

United States District Court
Northern District of California

5

FAC.  Plaintiffs' property is located in one of the rezoned districts, Boonville/Woodyglen.  *Id*. "Plaintiffs were the only qualified persons in an agricultural zone in the County adversely affected by the 'opt-out' amendment to the zoning plan." *Id.* ¶ 48.  Plaintiffs allege the zoning decision was made for no legitimate reason and based on impermissible motives, and "[o]n information and belief, this was the first time a County in the State of California created an opt-out zone in the zoning plan that prevented a property owner from cultivating cannabis based solely on the vote of the neighbors." *Id*. ¶ 49.

## II.      Procedural Background

On July 8, 2020, plaintiffs filed this lawsuit against the County of Mendocino and Anzilotti.  The complaint alleged four causes of action pursuant to 42 U.S.C. §1983, alleging violations of plaintiffs' rights under the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution.

Defendants moved to dismiss the complaint, and after a hearing on September 25, 2020, the Court granted the motions to dismiss and granted leave to amend.  At the hearing, the Court informed plaintiffs that (1) the complaint did not sufficiently allege that plaintiffs constituted a "class of one" with regard to the Equal Protection claims, (2) the Court was skeptical plaintiffs could allege a federally cognizable property interest with regard to the Due Process claims, and (3) the conspiracy allegations against Anzilotti were insufficient.

On October 23, 2020, plaintiffs filed the FAC.  The FAC added additional allegations regarding the denial of plaintiffs' application and Commissioner Curry's role in implementing the Ordinance, as well the allegations regarding the change in the County's zoning plan that prohibited plaintiffs from cultivating cannabis on their property and Anzilotti's alleged role in the zoning change.  *See, e.g. id.* at ¶¶ 16, 31, 37, 39-49.  The FAC also added new allegations regarding the regulation of marijuana in California and the tension between federal and state law with regard to the classification of marijuana.  *See id.* at ¶¶ 22-27.  The FAC also names four new individual

defendants:  John McCowen,[4] Carre Brown, and Georgeanne Croskey, all of whom were and are members of the Board of Supervisors for the County of Mendocino; and Mason Hemphill, the California Department of Fish and Wildlife ("CDFW") employee who participated in the August 10, 2017 search of plaintiffs' property and who seized plaintiffs' marijuana plants and other property.

The FAC alleges four causes of action pursuant to 42 U.S.C. § 1983:  (1) Class of One/Equal Protection, against the County; (2) Class of One/Equal Protection, Conspiracy between the County and Anzilotti, McCowen, Brown, and Croskey; (3) Substantive Due Process, against the County; and (4) Substantive Due Process, Conspiracy between the County and Anzilotti, McCowen, Brown and Croskey.  Plaintiffs seek declaratory and injunctive relief, as well as damages and attorneys' fees.

Now before the Court are motions to dismiss the FAC filed by the County, McCowen, Brown, Croskey, and Anzilotti.[5]

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint that fails to do so is subject to dismissal pursuant to Rule 12(b)(6).  Fed. R. Civ. P. 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678

---

[4]  The FAC sometimes refers to McCowen as "John McCune."  It is unclear if this is a typographical error.

[5]  Hemphill's answer to the FAC is due in January 2021.

United States District Court
Northern District of California

(quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In reviewing a Rule 12(b)(6) motion, courts must accept as true all facts alleged in the complaint and draw all reasonable inferences in favor of the non-moving party.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  However, courts are not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

If a court dismisses a complaint, it must decide whether to grant leave to amend.  The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.   Due Process:  Third and Fourth Causes of Action

The FAC alleges that plaintiffs have a property interest in farming their property and that defendants violated their due process rights by arbitrarily and capriciously denying their application for a permit to cultivate medical cannabis and by rezoning the area to prohibit cannabis cultivation at plaintiffs' property.  FAC ¶¶ 64-68.  Plaintiffs allege that "[b]y licensing and taxing production, distribution and sales of cannabis, the State of California has created a property interest in cannabis products produced for distribution and sale in California." *Id*. ¶ 22.

In relevant part, the Fourteenth Amendment commands that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend. XIV § 1.  To succeed on a procedural or substantive due process claim, a plaintiff "must first demonstrate that he was deprived of a constitutionally protected property interest."

8

*Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011 (9th Cir. 2011). "Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 757 (2005) (internal quotation marks and citation omitted).

Defendants contend that plaintiffs cannot state a claim for violation of their due process rights because although California has decriminalized aspects of marijuana cultivation, those activities remain prohibited under federal law. *See generally Gonzales v. Raich*, 545 U.S. 1 (2005) (upholding Controlled Substances Act and holding Congress' Commerce Clause authority includes the power to prohibit the local cultivation and use of marijuana, even when such local cultivation and use complies with California law). Defendants argue that a local licensing or permitting scheme for cannabis cultivation does not give rise to a property interest protected by the federal Constitution.

Other courts have recognized "the murky interface of California state law permitting the cultivation and sale of marijuana in some circumstances and the United States federal law banning all such activities." *Citizens Against Corruption v. County of Kern*, Case No. 1:19-CV-0106 AWI GSA JLT, __ F. Supp. 3d __, 2019 WL 1979921, at *3 (E.D. Cal. May 3, 2019). In *Citizens Against Corruption*, medical marijuana dispensaries filed suit against Kern County challenging a county ordinance that banned marijuana dispensaries and permitted existing dispensaries to continue operation for an additional twelve months. Judge Ishii dismissed the plaintiffs' due process claims on the ground that the plaintiffs did not have a legally protectible property interest in cultivating marijuana:

> [Citing cases] Those precedents illustrate the problems and limitation Plaintiffs face in trying to vindicate rights that depend on California marijuana law in federal court. Here, Plaintiffs face the insurmountable hurdle that federal law does not recognize any protectible liberty or property interest in the cultivation, ownership, or sale of marijuana. Even though "state law creates a property interest, not all state-created rights rise to the level of a constitutionally protected interest." *Brady v. Gebbie*, 859 F.2d 1543, 1548 n.3 (9th Cir. 1988). "The Supreme Court has held that no person can have a legally protected interest in contraband per se . . . under federal law, marijuana is contraband per se, which means no person can have a cognizable legal interest in it." *Schmidt v. Cty. of Nev.*, 2011 U.S. Dist. LEXIS 78111, 15-16 (E.D. Cal. July 19, 2011), citing *United States v. Jeffers*, 342 U.S. 48, 53 (1951). . . . As framed, plaintiffs cannot make a due process claim.

9

*Id.* Numerous other courts have reached similar conclusions. *See e.g. id.* (citing cases); *see also Kent v. County of Yolo*, 411 F. Supp. 3d 1118, 1123 (E.D. Cal. 2019) (dismissing marijuana cultivator's due process claim challenging county's refusal to renew medical cannabis cultivation license because "federal law does not recognize any protectible property interest in the cultivation of cannabis"); *Grandpa Bud, LLC v. Chelan County Wash.*, No. 2:19-CV-51-RMP, __ F. Supp. 3d. __, 2020 WL 2736984, at *4 (E.D. Wash. May 26, 2020) (dismissing cultivator's due process claim because "[e]ven when cannabis production is a legitimate use of one's property at the state level, such use is not recognized as a protectable property interest under the U.S. Constitution"); *Allen v. County of Lake*, Case No. 14-cv-03934-TEH, 2017 WL 363209, at *2-3 (N.D. Cal. Jan. 25, 2017) (citing cases for the proposition that "there is no protected property interest in medical marijuana for purposes of the Fourteenth Amendment").

Plaintiffs do not cite any on-point authority holding that they can assert a property interest in cultivating medical cannabis that is cognizable in a § 1983 action. Instead, plaintiffs contend that California has created a state property interest by licensing and taxing production, distribution and sales of cannabis, and that the "fact, law and logic [of *Gonzales v. Raich*] is no longer valid because there is no legal 'national market' for marijuana produced, possessed, distributed and sold in California pursuant to licenses granted by the State of California." Pls' Opp'n at 18 (Dkt. No. 43).[6] Plaintiffs argue that "the 'gaping hole' on which Congress and the Court relied in the prohibition of intrastate manufacture and possession of marijuana has been filled by the State of California's implementation of its own comprehensive regulation," and plaintiffs emphasize that since *Gonzales* numerous additional states have legalized the use of marijuana for medicinal or recreational purposes. *Id.* at 19.

The Court recognizes that the state regulatory landscape has changed since *Gonzales*. Nevertheless, marijuana cultivation remains illegal under federal law. As such, the Court agrees with the reasoning of the other courts that have addressed this question and concludes that plaintiffs do not have federally protected property interest in cultivating medical marijuana and thus that they

_____

[6] For ease of reference citations to page numbers refer to the ECF branded number in the upper right corner of the page.

United States District Court
Northern District of California

cannot state a claim under § 1983 for violation of their due process rights.  Because plaintiffs' due process claim fails, the fourth cause of action for conspiracy also fails as a matter of law.  *See Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (upholding dismissal of conspiracy claim where underlying constitutional claim was denied).

Accordingly, the Court GRANTS defendants' motions to dismiss the third and fourth causes of action without leave to amend.

## II.  Equal Protection/Class of One

### A.  First Cause of Action Against the County

The FAC alleges that the County denied plaintiffs' application for a permit to cultivate medical cannabis for irrational, arbitrary and impermissible reasons in violation of the Equal Protection Clause of the Fourteenth Amendment, and that plaintiffs "are the only AG40 applicants denied a permit who met the necessary requirements under category (B)(3) of the Ordinance and were approved for a permit by Diane Curry acting as the Interim Commissioner of the Department of Agriculture and final decisionmaker for the County."  FAC ¶ 56.  Plaintiffs also allege that the December 4, 2018 amendment of the Ordinance "specifically targeted the Plaintiffs as the only qualified applicants in an agricultural area prohibited from cultivating cannabis based on change in zoning."  *Id.* ¶ 57.

Plaintiffs' "equal protection claims do not require a constitutionally protected property interest."  *Hermosa on Metropole, LLC v. City of Avalon*, 659 Fed. App'x 409, 411 (9th Cir. 2016) (citing *Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 895, 903 (9th Cir. 2007)); *see also Kent*, 411 F. Supp. 3d at 1124 (separately analyzing medical cannabis cultivator's Due Process and Equal Protection claims and noting that "Plaintiff's only claim that does not specifically rely upon the identification of a constitutionally protected property right is his Sixth COA for Equal Protection.").  The Equal Protection Clause ensures that "all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).   "The Supreme Court has recognized that 'an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally

1    singled out as a so-called 'class of one.'" *Gerhart*, 637 F.3d at 1021 (quoting *Enquist v. Or. Dep't*

2    *of Agric.*, 553 U.S. 591, 601 (2008)).

3         Defendants contend that plaintiffs have not stated a claim because the facts alleged in the

4    FAC demonstrate that plaintiffs did not qualify for a (B)(3) permit.  Defendants argue that (B)(3)

5    applicants must satisfy the requirements of Paragraph (B)(1) of the ordinance, and that (B)(1)

6    requires evidence of both prior and existing cultivation at the "origin site."  Defendants assert that

7    the Court can infer from the FAC that plaintiffs only had evidence of prior cultivation at the Willits

8    site and that at the time they applied for the (B)(3) permit, they were no longer cultivating at the

9    Willits location.  Thus, defendants argue, plaintiffs were not entitled to receive a (B)(3) permit and

10   there was a rational basis for the permit denial.  With regard to the rezoning, defendants argue that

11   plaintiffs have not alleged that the County acted differently with regard to similarly situated

12   cultivators in other proposed "rezones."

13        The Court concludes that as a pleading matter, plaintiffs have alleged enough facts to state

14   a claim.  Plaintiffs allege that Interim Commissioner Curry determined that they satisfied the

15   requirements for a (B)(3) permit and that Curry was the final decisionmaker for the County with

16   regard to the interpretation and implementation of the Ordinance.  Plaintiffs also allege that they

17   were the only AG40 applicants who met the (B)(3) requirements, as determined by Curry, who were

18   denied a permit, and that they were specifically targeted in the "opt-out" rezoning process.  These

19   allegations are sufficient to state a claim that plaintiffs were intentionally treated differently than

20   other similarly situated permit applicants without a rational basis.  *See Gerhart*, 637 F.3d at 1022-

21   24 (reversing summary judgment in favor of defendants on a class-of-one claim where plaintiff

22   presented evidence that he was treated differently than other property owners with regard to a permit

23   denial).  The Court finds that the parties' disputes regarding how MCC 10A.17.080(B)(1) and (B)(3)

24   should be interpreted and whether the County's interpretation is entitled to *Chevron* deference are

25   not amenable to resolution on the present motions to dismiss.[7]

26

27        [7] Defendants also assert that the entire action should be dismissed under the doctrine of *ex*
     *Turpi Causa Non Oritur Actio* because Congress did not intend 42 U.S.C. § 1983 to allow a plaintiff

28   to receive monetary damages for a lost opportunity to engage in an enterprise forbidden by federal
     criminal statutes.  The Court notes that plaintiffs seek declaratory and injunctive relief in addition

United States District Court
Northern District of California

1

2    **B.    Second Cause of Action – Conspiracy**

3         Defendant Anzilotti separately challenges the conspiracy allegations alleged against her in

4    the second cause of action.   "To state a claim for conspiracy to violate constitutional rights, 'the

5    plaintiff must state specific facts to support the existence of a claimed conspiracy.'"  *Olsen v. Idaho*

6    *State Bd. Of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004).   A defendant's knowledge of and

7    participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the

8    defendant's actions.  *Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999).

9         The FAC alleges, *inter alia*, that (1) Anzilotti made a false report of water diversion on

10   plaintiffs' property in order to thwart the approval of plaintiffs' application to cultivate marijuana,

11   leading to a CDFW raid on plaintiffs' property; (2) Anzilotti colluded with her neighbors and

12   conspired with McCowen, Brown, and Croskey to create an "opt-out" process under which

13   plaintiffs' property was rezoned; (3) Anzilotti was politically connected to McCowen and Brown

14   and complained to them in private; and (4) plaintiff Gurr filed a complaint alleging that Anzilotti

15   used her position as an "unsworn administrator" with the Sheriff's office to conduct personal

16   business to influence decisions by County officials and employees that would personally benefit

17   her.  FAC ¶¶ 17, 31-32, 39-40, 45.  The FAC also alleges, as part of the conspiracy allegations, that

18   Curry was told by Deputy County Counsel Matthew Kiedrowski that McCowen would never allow

19   plaintiffs' permit to be approved and that after Curry approved plaintiffs' permit, Kiedrowski

20   intervened and prevented Curry from delivering the permit to plaintiffs.  *Id*. ¶¶ 41-44.

21        Anzilotti contends that the conspiracy allegations are conclusory and do not show an

22   agreement to engage in illegal conduct.   Anzilotti also contends that even if plaintiffs have

23   sufficiently alleged a conspiracy, she is immune from liability under the *Noerr-Pennington* doctrine.

24   "Under the *Noerr-Pennington* doctrine, those who petition all departments of the government for

25   redress are generally immune from liability."  *Empress LLC v. City and County of San Francisco*,

26   419 F.3d 1052, 1056 (9th Cir. 2005).   "Although the *Noerr-Pennington* doctrine originally

27   ───────────────────────

28   to monetary damages, and reserves judgment on whether plaintiffs' claims for monetary damages
     are barred under this theory.

United States District Court
Northern District of California

immunized individuals and entities from antitrust liability, *Noerr-Pennington* immunity now applies to claims under § 1983 that are based on the petitioning of public authorities." *Id*.

The Court agrees that the allegations against Anzilotti describe activities protected by the *Noerr-Pennington* doctrine. Most of the acts described in the FAC involve Anzilotti petitioning County officials and other government agencies to complain about plaintiffs' marijuana cultivation and efforts by her to have plaintiffs' property rezoned to prohibit marijuana cultivation. Courts have held similar activities to be immune from suit. In *Empress LLC*, hotel owners filed a § 1983 action against the City of San Francisco, various city officials, and the director of a nonprofit housing corporation, alleging that the city had unlawfully delegated zoning decisions to the nonprofit director by taking official actions consistent with the director's requests on zoning petitions affecting San Francisco's Tenderloin area. The hotel owners' claims against the nonprofit director were based upon a letter the director sent to the San Francisco Zoning Administrator requesting a zoning determination and zoning enforcement, as well as a conversation between the director and the Zoning Administrator. *Id.* at 1054, 1056.

The Ninth Circuit affirmed the dismissal of the claims against the nonprofit director, holding the letter and conversation were protected petitioning activities. *Id.* The court rejected the argument that the "sham exception" to the *Noerr-Pennington* doctrine applied: "The Patels' complaint does not allege that Shaw used government processes, as opposed to the outcome of those processes, as a mechanism to injure the Patels, and that therefore his petitioning activity falls under the sham exception to the *Noerr-Pennington* doctrine. As such, no matter what Shaw's motives were, his petitioning activity as alleged in the Patels' complaint is immunized under the *Noerr-Pennington* doctrine." *Id*. at 1057. The court further noted, "there is no 'conspiracy' exception to the *Noerr-Pennington* doctrine that applies when government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights." *Id*. (citing *City of Columbia v. Omni Outdoor Adver. Inc.*, 499 U.S. 365, 382-83 (1991)). "In such circumstances, a remedy lies only against the conspiring government officials, not against the private citizens." *Id*.

Plaintiffs concede in their opposition that "Defendant Anzilotti is immune for participating

14

1   in legitimate lobbying activities which would include attending public meetings and both publicly

2   and privately talking to officials."  Pls' Opp'n at 15 (Dkt. No. 44).  However, plaintiffs contend that

3   the immunity does not extend to the allegations that Anzilotti made the false allegation of water

4   diversion and that Anzilotti caused Kiedrowski to interfere with the permit process and prevented

5   plaintiffs from receiving the permit approved by Interim Commissioner Curry.

6          The Ninth Circuit has held similar allegations to be within the ambit of the *Noerr-Pennington*

7   doctrine.  In *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886 (9th Cir. 1988), real

8   estate developers brought suit for antitrust and civil rights violations against a city's redevelopment

9   agency, the city, and another real estate developer, Koll.  The plaintiffs alleged, *inter alia*, that Koll

10  made "false reports and misrepresentations" to the city council with regard to a  redevelopment plan.

11  The Ninth Circuit affirmed the dismissal of the claims against Koll based on *Noerr-Pennington*:

12          As pointed out by the Court in *Noerr*, attempts to influence public officials may
            occasionally result in "deception of the public, manufacture of bogus sources of
13          reference, [and] distortion of public sources of information. . . . While we do not
            condone misrepresentations, we trust that the council and agency, acting in the public
14          sphere, can "accommodate false statements and reveal their falsity"

15  *Id*. at 894 (internal citations omitted).  Here, even if Anzilotti made a false report to CDFW about

16  water diversion, that report is petitioning activity protected by the *Noerr-Pennington* doctrine.

17  Further, the allegation that Anzilotti and CDFW agent Steve White "decided to use a false allegation

18  of water diversion as a pretext to obtain a warrant and seize the plaintiffs' property" is conclusory

19  and devoid of specific facts showing that Anzilotti and White conspired against plaintiffs.  FAC

20  ¶ 17.

21          Plaintiffs' arguments regarding the allegations about Deputy County Counsel Kiedrowski

22  interfering with the permit process – insofar as those allegations relate to Anzilotti – fare no better.

23  As an initial matter, the FAC does not allege any direct connection between Anzilotti and

24  Kiedrowski's actions.  Instead, the FAC alleges that the conspiracy was initially formed between

25  Anzilotti and CDFW agent White, later "evolved to include members of the Board of Supervisors,

26  John McCowen and Carre Brown," and that "McCowen recruited Assistant County Counsel

27  Matthew Kiedrowski to prevent the permit approved by Commissioner Curry from being delivered

28  to the plaintiffs."  *Id*. ¶ 39.  There are too many inferential leaps required in order to connect Anzilotti

United States District Court
Northern District of California

15

with Kiedrowski's actions.  Moreover, even if one engaged in those inferences, the only activities Anzilotti is alleged to have engaged in consists of petitioning activities protected by the *Noerr-Pennington* doctrine:  complaining publicly and privately to McCowen, Brown, and other state and local agencies.  *See id.* ¶¶ 17, 40, 44-45.[8]

Accordingly, the Court GRANTS defendant Anzilotti's motion to dismiss the FAC. Although the Court is skeptical that plaintiffs can state a claim against Anzilotti under section 1983, the Court will grant one final opportunity to amend the second cause of action.

## CONCLUSION

Accordingly, defendants' motions to dismiss the FAC are GRANTED IN PART and DENIED IN PART.  The first cause of action may proceed.  The second cause of action as alleged against defendant Anzilotti is dismissed with leave to amend.  The third and fourth causes of action are dismissed without leave to amend.  If plaintiffs wish to amend the second cause of action, they may do so no later than **December 23, 2020**.

**IT IS SO ORDERED**.

Dated: December 13, 2020

SUSAN ILLSTON
United States District Judge

United States District Court
Northern District of California

---

[8] The FAC references the complaint Gurr filed against Anzilotti for allegedly misusing her "unsworn position" in the Sheriff's Office, but does not elaborate on that allegation or tie that allegation to the alleged conspiracy.