1

2

3

4

5

6            UNITED STATES DISTRICT COURT

7           NORTHERN DISTRICT OF CALIFORNIA

8

9    ANN MARIE BORGES, *et al.*,              Case No. 20-cv-04537-SI

10            Plaintiffs,

11       v.                                    **ORDER GRANTING DEFENDANT'S
                                              MOTION FOR SUMMARY
12   COUNTY OF MENDOCINO,                      JUDGMENT**

13            Defendant.                       Re: Dkt. Nos. 97, 111

14

15          On April 8, 2022, the Court heard argument on defendant's motion for summary judgment.

16   For the reasons set forth below, the Court GRANTS the motion.  The Court DENIES plaintiffs'

17   administrative motion to reopen the deposition of Diane Curry because the Court finds that plaintiffs

18   have not demonstrated any basis for reopening that deposition.

19

20                          **BACKGROUND**

21          Plaintiffs Ann Marie Borges and Chris Gurr allege that the County of Mendocino violated

22   their rights under the Equal Protection Clause of Fourteenth Amendment to the United States

23   Constitution when the County denied their application for a permit to cultivate medical cannabis on

24   July 9, 2018, and when the Mendocino County Board of Supervisors adopted an ordinance zoning

25   their neighborhood to prohibit commercial cannabis cultivation on December 4, 2018.  Borges and

26   Gurr assert a "class of one" claim, contending that the County singled them out for reasons unrelated

27   to any legitimate governmental objective, and that they were treated differently than others similarly

28   situated.

United States District Court
Northern District of California

United States District Court
Northern District of California

I.      **Mendocino County's Medical Cannabis Cultivation Ordinance**

In April 2017, the County of Mendocino adopted Medical Cannabis Cultivation Ordinance ("MCCO") No. 4381, enacting Chapter[1] 10A.17 of the Mendocino County Code.  Def's Request for Judicial Notice, Ex. A (Dkt. No. 99-1).[2]  Along with Chapter 10A.17, the Board of Supervisors also adopted complementary zoning regulations.  *Id.* at Ex. C at 68[3] (Board of Supervisors Resolution No. 17-402 ¶ 2).

Chapter 10A.17 sets forth three successive phases of regulation.  Section 10.A.17.080 provides,

**Section 10A.17.080 – Permit Phases and Requirements Specific to each Phase**

Unless specifically exempted, in addition to compliance with all other requirements of this Chapter, all Permits shall comply with the following requirements:

(A)     Permits under the MCCO will be issued in the following three phases:

(1)     Phase One: Following the effective date of the MCCO, Permits will only be issued to applicants who provide to the Agricultural Commissioner pursuant to paragraph (B)(1) of this section proof of cultivation at a cultivation site prior to January 1, 2016 ("proof of prior cultivation"), and who comply with all other applicable conditions of this Chapter and Chapter 20.242. Applications for Permits during Phase One shall only be accepted until December 31, 2017.[4] Applicants able to provide proof of prior cultivation may apply for a Permit on a relocation site pursuant to paragraph (B)(3) of this section.

(2)     Phase Two:  Starting January 1, 2018, the Agricultural Commissioner will begin accepting applications for Type 1A and Type 2A Permits for indoor cultivation in the following zoning districts, subject to compliance with all other applicable conditions of this Chapter and Chapter 20.242: Limited Industrial (I-1), General Industrial (G-2),

---

[1]  Some public documents refer to "Chapter" 10.A.17.080 and some refer to "Section."  The Court uses both interchangeably when referring to this portion of the ordinance.

[2]  Plaintiffs do not object to defendant's request for judicial notice.  The Court finds that the public records submitted by defendant at Dkt. No. 99 are the proper subject of judicial notice, and accordingly GRANTS defendant's request for judicial notice.

[3]  The page numbers refer to the ECF stamped numbers in the upper right hand corner of the exhibits.

[4]  Based upon other documents submitted by the County in its request for judicial notice, it appears that the date for accepting Phase One applications may have been extended to October 4, 2019.  *See* Def's Request for Judicial Notice, Ex. D (Cannabis Cultivation Program FAQs, found at https://www.mendocinocounty.org/government/cannabis-cultivation/cannabis-cultivation-faq, printed 1/19/22).

and Pinoleville Industrial (P-1).  Proof of cultivation prior to January 1, 2016, is not required.

(3)   Phase Three:   Starting January 1, 2020, the Agricultural Commissioner will begin accepting Permit applications from any applicant in conformance with the conditions of this Chapter and Chapter 20.242.  Proof of cultivation prior to January 1, 2016, is not required.

(B)   Requirements specific to Phase One Permits.

(1)   Proof of Prior Cultivation. Persons applying for a Permit during Phase One shall be required to provide to the Agricultural Commissioner evidence that they were cultivating cannabis on the cultivation site prior to January 1, 2016, which cultivation site shall have been in compliance with the provisions of section 10A.17.040.  Evidence shall include:

(a)   Photographs of any cultivation activities that existed on the legal parcel prior to January 1, 2016, including: (i) ground level views of the cultivation activities and (ii) aerial views from Google Earth, Bing Maps, Terraserver, or a comparable service showing: both the entire legal parcel and the cultivation site in more detail.  The date these images were captured shall be noted.

(b)   Photographs of any cultivation activities that currently exist on the legal parcel, including: (i) ground level views of the cultivation activities and (ii) aerial views from Google Earth, Bing Maps, Terraserver, or a comparable service showing: both the entire legal parcel and the cultivation site in more detail.  The date these images were captured shall be noted.

(c)   At least one additional document demonstrating cultivation on the legal parcel prior to January 1, 2016, which evidence may be used to substitute for evidence pursuant to clause (a).  The Agricultural Commissioner shall prepare a list of the types of documentation that will be accepted to meet this requirement, and may accept other similarly reliable documentary evidence showing that cannabis was cultivated for medical use prior to January 1, 2016.

(d)   Proof of prior cultivation shall be assigned to the applicant relative to their prior cultivation site.

(e)   Persons who participated in a permit program pursuant to the County's Chapter 9.31 in previous years may present evidence of such participation and payment of all required fees in order to provide proof of prior cultivation.

(2)   Zoning Districts; Exceptions. . . .

. . .

(3)   Relocation.  Persons able to show proof of prior cultivation pursuant to paragraph (B)(1) above may apply for a Permit not on the site

United States District Court
Northern District of California

3

previously cultivated (the "origin site") but on a different legal parcel (the "destination site"), subject to the following requirements:

(a)      Persons may apply to relocate their cultivation site pursuant to this paragraph (B)(3) until three (3) years after the effective date of the ordinance adopting this Chapter.

(b)      The location and operation of the proposed cultivation site on the destination parcel complies with all requirements and development standards that apply to a new cultivation site as of January 1, 2020, pursuant to this Chapter and Chapter 20.242; provided, however:

     (i)      An existing cultivation site shall not be transferred to a legal parcel located within the Forestland or Timber Production Zone zoning districts.

     (ii)      An origin site may relocate to a destination site in the Rangeland zoning district, so long as the destination site has an existing cultivation site and no new cultivation sites would be established.

(c)      The origin site shall be restored.  The application for a Permit on a destination site shall be accompanied by a restoration plan that is consistent with the standard conditions and best management practices listed in the North Coast Regional Water Quality Control Board Order No. 2015-0023, and which shall include the following:

     (i)      Remove or repurpose buildings, greenhouses, fences, irrigation equipment, water intakes, pumps, storage tanks and other materials brought to the origin site for the purpose of cannabis cultivation;

     (ii)      Remove illegal dams, ponds, or other in-stream water storage to restore material stream flows, unless such features will continue in use;

     (iii)      Remove or compost agricultural wastes;

     (iv)      Remove trash or other debris;

     (v)      Revegetate cleared areas with native plans typical of nearby natural areas, including groundcover, shrubs and trees.

(d)      Unless the destination site is within the Agricultural zoning district, the application shall include either a water availability analysis pursuant to paragraph (C)(1)(b) below or a will serve letter pursuant to paragraph (C)(1)(c) below.

(e)      Prior to the issuance of the Permit to cultivate cannabis for medical use at the destination parcel, the applicant shall provide the Agricultural Commissioner with an agreement, on a form approved by the Agricultural Commissioner and County Counsel, providing that the applicant releases any

<blockquote>
right to continue or resume cultivation or medical cannabis on the origin parcel.

(f)    If a person is granted a Permit for a destination site, any claims or proof of prior cultivation on the origin site shall be effectively transferred to the destination site, and the ability to claim proof of prior cultivation at the origin site shall be extinguished.

(g)    There shall be a two (2) acre minimum parcel size for all Type C, Type C-A or Type C-B Permits.

(4)    Multiple Permits . . . .

. . .
</blockquote>

Def's Request for Judicial Notice, Ex. A (Dkt. No. 99-1).

Phase One was designed to bring existing growers into the legal market before permitting new entrants into the market. *See id.*; *see also* Def's Request for Judicial Notice, Ex. C at 74 (Draft CEQA Initial Study stating "Phase 1 consists of the review and permitting of eligible operations in existence as of January 1, 2016 and extends from adoption of the ordinance to January 1, 2018.") (Dkt. No. 99-1); *id.* at 91-92 (stating that permits issued for Phase One "may require physical changes to the existing operations to come into compliance with [various] regulations" and that such changes may include "Relocation to another parcel.").

During the relevant time period, Chapter 10.A.17.080 applied "throughout unincorporated areas of Mendocino County . . . , exclusive of areas within the Coastal Zone." *Id.* at 75; *see also* Def's Request for Judicial Notice, Ex. F (County of Mendocino Medical Cannabis Cultivation – Regulation Application Checklist, stating "Applications are only being accepted for cultivation sites within zoning districts of the Inland Zoning Code.  Currently applications for cultivation in the Coastal Zone are not being accepted.") (Dkt. No. 99-4).

When the ordinance took effect in April 2017, Diane Curry was the County's Interim Agricultural Commissioner and she was responsible for implementing the ordinance and evaluating permit applications.  Curry Decl. ¶¶ 1, 3-4 (Dkt. No. 103-1); Graham Decl., Ex. BB (Curry Depo. at 25, 29) (Dkt. No. 97-2).  Curry testified at her deposition that her office established a process under which applicants who filed applications for permits were issued receipts that functioned as "provisional permits," and that those with provisional permits "were in the process of trying to get

United States District Court
Northern District of California

1    compliant [with the necessary requirements]" and "were working toward getting [a] finalized

2    permit." Curry Depo. at 44:21-45:16.  Curry's office issued receipts for applications upon the filing

3    of the applications, and receipts were issued for applications that did not meet all the requirements

4    to obtain a final permit.  *Id.*

5

6    **II.     Plaintiffs' Application for a Permit**

7          In August of 2016, plaintiffs Ann Marie Borges and Chris Gurr purchased an eleven-acre

8    property at 1181 Boonville Road, Ukiah, California.  Gurr Decl. ¶ 4 (Dkt. No. 103-3).[5]  The property

9    was zoned "AG/40," which allowed agricultural use, and Borges and Gurr intended to cultivate

10   medical cannabis on the property.  *Id.* ¶¶ 3-4. In 2017 they formed a business called Goose Head

11   Valley Farms for that purpose.  *Id.*

12         In May 2017, plaintiffs applied for a Phase One permit to cultivate medical cannabis on their

13   Ukiah property.  Def's Request for Judicial Notice, Ex. E (plaintiffs' application) (Dkt. Nos. 99-2

14   & 99-3); *see also* Gurr Decl., Ex. 1.[6]  On May 4, 2017, Borges and Gurr met with Curry to submit

15   their permit application, and on the same day Curry issued an application receipt which stated, "This

16   receipt, when signed and embossed, certifies that the Department of Agriculture is in receipt of an

17   application to cultivate cannabis at the above listed address.  The garden at this site is considered to

18   be in compliance, or working towards compliance until such time as a permit is issued or denied."

19   Gurr Decl. ¶ 5 & Ex. 2.  Plaintiffs state in their declarations that Curry told them that they could

20   begin cultivating cannabis at the Ukiah property, and that they did so.  Borges Decl. ¶ 17; Gurr Decl.

21   ¶ 6.

22         Because the Ukiah property was not cultivated prior to January 2016, Borges and Gurr

23   applied for a (B)(3) relocation permit.  *Id.*; Graham Decl., Ex. CC (Borges' and Gurr's Responses

24

25         [5] Defendant has raised numerous objections to plaintiffs' declarations and other evidence.
26   The Court OVERRULES these objections unless specifically noted otherwise in this order.

27         [6] Both parties have submitted copies of what they identify as plaintiffs' permit application.
     The version submitted by defendant is larger and contains other materials, such as letters from
28   plaintiffs' neighbors objecting to the approval of the application.

United States District Court
Northern District of California

to Requests for Admission Nos. 43 & 46 admitting that plaintiffs were not cultivating cannabis at Ukiah property prior to January 1, 2016) (Dkt. No. 97-2). Plaintiffs have admitted that at the time they submitted their application for a Phase One permit, they were not cultivating cannabis at any site in Mendocino County, and that they were trying to establish a new cultivation site. Graham Decl., Ex. CC (Borges' and Gurr's Responses to Requests for Admission Nos. 44 & 47).

Plaintiffs' initial application identified a coastal location at 43825 Crispin Lane, Manchester, California as the proof of prior cultivation, with photos and utility bills from 2009 as supporting evidence. Def's Request for Judicial Notice, Ex. E at 68, 152; Nevedal Decl. ¶ 2 (Dkt. No. 98). After being notified that a coastal location could not qualify as the proof of prior cultivation, Borges and Gurr amended their application to provide proof of prior cultivation based on inland location at 26500 Reynolds Highway in Willits, California, with photos from 1986-1987 as supporting evidence. Def's Request for Judicial Notice, Ex. E at 3, Ex. H; Nevedal Decl. ¶ 2; Graham Decl., Ex. DD (Response to Special Interrogatory 8) (Dkt. No. 97-2). At the time of their application, Borges and Gurr were not currently cultivating cannabis at the Willits location, and they had abandoned any cultivation activities at that property prior to January 1, 2016. Graham Decl., Ex. CC (Borges' and Gurr's Responses to Request for Admission No. 48).[7]

On or about September 16, 2017, Curry notified plaintiffs their amended application had been finally approved. Borges Decl. ¶ 24; Gurr Decl. ¶ 8. In her declaration, Curry states that she was satisfied that the Willits location met the proof of prior cultivation requirement, although she does not explain how she reached that conclusion. Curry Decl. ¶ 8.[8] The County asserts that Curry's

---

[7] Borges states in her declaration that she "cultivated cannabis at several locations in the County beginning in the 1980's and continuing to 2016." Borges Decl. ¶ 7. However, Borges does not identify those locations, nor does she state that she was cultivating cannabis at the Willits location at the time plaintiffs applied for the permit. Further, as noted *supra*, plaintiffs have specifically admitted that they had abandoned cultivation activities at the Willits property prior to January 1, 2016. At the hearing on defendant's motion, plaintiffs' counsel confirmed that at the time plaintiffs applied for the permit, they no longer had possession or control of the Willits property.

[8] Curry also states in her declaration that "[i]t was the intent of the county to let our legacy growers be the first to obtain permits" and she describes (B)(3) applicants as those "who provide proof of cultivation activities prior to January 1, 2016, at an origin site and apply to relocate their cultivation site to a destination parcel." *Id.* ¶¶ 4-5. Curry does not explain how a (B)(3) applicant who was no longer cultivating cannabis at an origin site could "relocate" cultivation activities to a

determination was erroneous because Borges and Gurr did not qualify as "legacy growers" because they were not currently cultivating cannabis at the "origin" site of prior cultivation, namely the Willits location.

On September 19, 2017, plaintiffs went to Curry's office to pick up the permit, but Deputy County Counsel Matthew Kiedrowski informed them that they needed to provide proof that they would not resume cannabis cultivation at the Willits location.  *Id.*  Plaintiffs hired a local land use attorney, and on or about October 31, 2017, plaintiffs' attorney submitted to the Deputy County Counsel a proposed "Agreement Not to Resume Cannabis Cultivation" agreement signed by Borges. Def's Request for Judicial Notice, Ex. H (Dkt. No. 99-4).

Kiedrowski states in his declaration,

3.     Relocation cannabis cultivation permits ("relocation permit") are covered by MCMC section 10A.17.080(B)(3).  One of the requirements for a relocation permit is that "Prior to the issuance of the Permit to cultivate cannabis at the destination parcel, the applicant shall provide the Agricultural Commissioner with an agreement, on a form approved by the Agricultural Commissioner and County Counsel, providing that the applicant releases any right to continue or resume cultivation of cannabis on the origin parcel." (MCMC, §10A.17.080(B)(3)(e).)  As stated in the ordinance, the document containing the release must be approved by both the Agricultural Commissioner and County Counsel.

4.     No template or form agreement pursuant to MCMC section 10A.17.080(B)(3)(e) was generated or approved by the County during Interim Agricultural Commissioner Diane Curry's tenure with the County.

5.     I was employed as a Deputy County Counsel during 2016 and 2017, when Plaintiffs Ann Marie Borges and Chris Gurr submitted their application and accompanying materials for a permit to cultivate cannabis.  At this time, there was an extensive backlog of permit applications.  To the best of my recollection, the Borges/Gurr application was the first such permit application seeking relocation brought to me for review.  The County's decision on Plaintiffs' application was presented to Plaintiffs more rapidly due to the circumstances surrounding Plaintiffs' application.

6.     I recall that Plaintiffs' counsel created their own version of the release to relinquish the right to continue or resume cultivation on an origin parcel, and submitted it for Agricultural Commissioner and County Counsel approval in an effort to expedite review. The County received Plaintiffs' Agreement Not to Resume Cannabis Cultivation in Autumn of 2017.  A true and correct copy of this proposed Agreement as received by my office is attached here as Exhibit A.[9]

---

destination parcel.

[9] This is the same document that defendant submitted as Exhibit H to the Request for Judicial Notice.

7.     County Counsel did not sign or approve Plaintiffs' Agreement Not to Resume Cannabis Cultivation because when our office further inquired about Plaintiffs' proof of prior and current cultivation — an essential part of the relocation permit application — it became clear that Plaintiffs were relying on a prior cultivation site that had last been used approximately thirty years before Plaintiffs applied for the relocation permit application.  The proof of prior and current cultivation did not meet the obligations of the ordinance nor were there a clear explanation of how the remediation efforts required by the ordinance would be met, particularly considering there was no showing that Plaintiffs had any then-present ownership or control over the origin site.

8.     As part of County Counsel's review of Plaintiff's proposed release, I informed Interim Agricultural Commissioner Curry that County Counsel had a role in approving the release form under the ordinance, and that she could not grant a relocation permit until Counsel's approval had been given on the release form, as per our obligations under the ordinance.[10]

9.     Without County Counsel's approval on the applicant's release of the right to cultivate on the origin site as per MCMC section 10A.17.080(B)(3)(e), the application could not be approved.  Any approval of a relocation permit application without County Counsel's approval on the release of right to cultivate document would be inconsistent with the ordinance.  Any representation that the Agricultural Commissioner could approve an application without County Counsel's approval on the release is inconsistent with the ordinance.

Kiedrowski Decl. ¶¶ 3-8 (Dkt. No. 110-5).

In March 2018, Diane Curry left her position as Interim Commissioner of the Department of Agriculture for Mendocino County.  In a letter dated July 9, 2018, Curry's successor, Harwinder Grewal, notified plaintiffs that their application to cultivate medical cannabis was being denied "based on non-compliance with Chapter 10A.17's proof of prior cultivation requirement."  Def's Request for Judicial Notice, Ex. E at 2.  The letter stated,

Proof of prior cultivation, as provided for by section 10A.17.080, paragraph (B)(1), has two primary elements:  evidence of cultivation activities that existed on the legal parcel prior to January 1, 2016, and evidence of cultivation activities that currently exist on the legal parcel.  The evidence of prior and current cultivation activities is to be provided for the same legal parcel.

_____

[10] Plaintiffs' administrative motion to reopen the deposition of Diane Curry is based on this statement in Mr. Kiedrowski's declaration.  Plaintiffs contend that this statement constitutes a waiver of attorney-client privilege, and thus that they must be permitted to redepose Ms. Curry and ask her questions about Curry's discussions with Kiedrowski regarding the ordinance and permitting process.  The Court finds that this statement does not constitute a waiver of the privilege and the information in paragraph 8 is essentially the same information contained in Ms. Curry's declaration at paragraph 9.  Further, plaintiffs state that they want to reopen Ms. Curry's deposition because there is a factual dispute about whether the ordinance requires "present control" over the origin site.  The Court finds that there is no such factual dispute, and that the interpretation of the ordinance is a legal question that the Court has resolved in this order.

United States District Court
Northern District of California

This requirement is further explained on the County's cannabis cultivation website in the Frequently Asked Questions page (https://www.mendocinocounty.org/business/cannabis-permits-and-licenses/cannabis-cultivation.faq). Since July 2017, it has stated that in order to show proof of prior cultivation, a cultivator must show that the current cultivation activities and the cultivation activities prior to January 1, 2016, took place on the same legal parcel. The same Frequently Asked Questions page referenced above clarifies that when establishing proof of prior cultivation, the cultivation activities before and after January 1, 2016, must be the same legal parcel, and that parcel will become the origin site for purposes of relocation.

Proof of prior cultivation provided to the Department of Agriculture for your permit application does not include evidence of cultivation activities on the same legal parcel for both current cultivation and cultivation prior to January 1, 2016. Instead, the proof of prior cultivation worksheet on file with the Department refers to a property near Willits and states that photographic evidence from 1986-1987 was reviewed by the Department. However, current cultivation activities are occurring at a property near the Ukiah area located on Boonville Road, and it is the Department's understanding that you have not had cultivation activities at the Willits area property for many years. The proof of prior cultivation evidence provided for your application does not conform to the requirements of paragraph (B)(1) of section 10A.17.080, because the prior and current activities are not occurring on the same parcel.

As a result of the denial of your cultivation permit application, you are prohibited from cultivating cannabis on your parcels in excess of the limitations of paragraph (B) or (C) of section 10.A.17.030 of the Mendocino County Code.[11]

*Id.*

## III.     Rezoning of Boonville Road/Woodyglen District

Plaintiffs claim that beginning in November 2017, one of their neighbors, Sue Anzilotti, colluded with their mutual neighbors to influence Mendocino County Supervisors John McCowen and Carre Brown to cause the County to rezone plaintiffs' neighborhood to prohibit cannabis cultivation. The record contains copies of letters signed by Anzilotti and other neighbors to Curry, McCowen and Brown (among others) complaining about plaintiffs' cannabis cultivation at the Ukiah location. *See, e.g.*, Def's Request for Judicial Notice, Ex. E at 34-41.

In October 2017, the County hired a consultant to "to develop a zoning exemption process (overlay) for cannabis cultivation sites." Def's Request for Judicial Notice, Ex. L at 2 (Agenda Summary for Nov. 18, 2018 Board of Supervisors Meeting) (Dkt. No. 99-5). The County created a

---

[11] That section of the code permits cultivation of medical cannabis for personal use.

Cannabis Overlay Working Group and three Overlay Sub-Groups to provide guidance and input to the consultant, and that process resulted in a proposal to identify "cannabis accommodation" and "cannabis prohibition" districts, as well as proposed amendments to the current regulations to permit such districts.  Def's Request for Judicial Notice, Ex. J at 15 (Nov. 16, 2018 Memorandum to Board of Supervisors) (Dkt. No. 99-4).[12]  There were two districts in Ukiah that were proposed as cannabis prohibition districts:  Boonville Road/Woodyglen and Deerwood.  *Id*.  Plaintiffs' property is in the Boonville Road/Woodyglen district.

In July 2018, the consultant held meetings in the districts proposed as cannabis accommodation and cannabis prohibition districts, including in Ukiah.  *Id*.  According to the public documents filed by defendant, the "meeting held in Ukiah to discuss the Deerwood and Boonville Road/Woodglen CP Districts generated strong support from community members for the district" and "no opposition to the proposed districts was voiced" at that meeting.  *Id*.  The consultant also solicited community input through a website, and "[i]nput on the Deerwood and Boonville Road/Woodyglen CP Combining Districts were consistently in favor of the district.  In total, 28 comments were received and all supported establishment of the districts."  *Id*. at 15-16.  The consultant also conducted an online survey of affected property owners, and of the respondents in in the Boonville Road/Woodyglen district, 92% supported establishing the prohibition district.  *Id*. at 16.[13]

---

[12]  Gurr states that he applied to be on the Cannabis Overlay Working Group and the sub-group for his district, and that he was initially approved to be in both groups and then he was "suddenly removed from the opt-out sub group without any explanation other than a mistake had been made."  Gurr Decl. ¶ 25.  Gurr has attached to his declaration emails from Cassandra Borgna, Executive Coordinator of the Mendocino County Executive Office, showing that Gurr was initially included in both groups (in an email dated January 12, 2018 at 2:09 p.m.) and that several hours later Borgna sent an email stating that "an error was made choosing the sub-groups" and that "the Opt-Out group has been changed to four people who will represent the different communities."  *Id*. Ex. G.  Along with Gurr, two other people were removed from the Opt-Out sub-group.  *Id.* The email also stated that Gurr and the others "can certainly submit their comments/recommendations to the consultant.  However, given the short time-frame regarding this matter, Carmel [Angelo] has determined that a smaller group is the best approach."  *Id.*  Gurr was not removed from the Cannabis Overlay Working Group.  *Id*.  Plaintiffs do not allege a procedural due process claim (or any other claim) with regard to Gurr not being able to participate in the sub-group.

[13]  The background of the process is described in detail in the November 16, 2018 memorandum from the Department of Planning and Building Services to the Board of Supervisors. *See generally* Def's Request for Judicial Notice, Ex. J.

On October 18, 2018, the Planning Commission held a meeting and reviewed the proposed ordinance to establish the cannabis accommodation and cannabis prohibition districts. Def's Request for Judicial Notice, Ex. L at 2-3. Following public testimony, the Planning Commission voted 6-0 to recommend that the Board of Supervisors adopt the ordinance. *Id*. at 43.

On November 16, 2018, the Board of Supervisors held a public meeting to discuss the zoning proposal and proposed ordinance. Def's Request for Judicial Notice, Ex. K. As the hearing, the consultant discussed the two proposed cannabis prohibition districts:

> The two districts that are proposed are Booneville Road, Woody Glen, and Deerwood. Here, we see the map of Deerwood. Deerwood sits about two miles from Ukiah, 2-3 miles, and Booneville, Woody Glen, again, two or three miles, but these are neighborhoods that were really developed predominantly in residential uses, and the folks have various concerns that they've expressed including water demands. A number of folks have expressed concerns about limited water supply, traffic, and neighborhoods and commercial character. That's really what drove the concerns in these neighborhoods. So, those are our two proposed cannabis prohibition districts.

*Id*. at 179. Gurr spoke in opposition to the proposal to zone the Boonville Road/Woodyglen district as a cannabis prohibition district. *Id*. at 197-98.

On December 4, 2018, the Board of Supervisors adopted Ordinance 4420 adding chapters 20.118 and 20.119 to the County Code to establish procedures to create accommodation or prohibition districts with super-majority support of a neighborhood's property owners. Def's Request for Judicial Notice, Ex. M at 12, 15 (MCC §§ 20.118.020(B) & 20.119.020(B)). Ordinance 4420 also established four districts allowing cultivation and two districts in which cannabis cultivation was prohibited. *Id*. at 14, 17 (MCC §§ 20.118.070 & 20.119.070). The two districts designated as cannabis prohibition districts were Boonville Road/Woodyglen and Deerwood. *Id*. at 17 (MCC § 20.119.070(B)).

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the

initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden to produce evidence showing the absence of a genuine issue of material fact.  *Id.* at 325.  Rather, the burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Id.*

Once the moving party has met its burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.  *Id.* at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."  *Id.*  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The evidence the parties present must be admissible.  Fed. R. Civ. P. 56(c)(4).

## DISCUSSION

### I.    Denial of Medical Cannabis Cultivation Permit

Borges and Gurr claim that the County denied their application for a permit to cultivate medical cannabis for irrational, arbitrary and impermissible reasons in violation of the Equal Protection Clause of the Fourteenth Amendment, and that they are the only AG40 applicants who met the necessary requirements under category (B)(3) of the Ordinance and who were denied a permit.

United States District Court
Northern District of California

1   The Equal Protection Clause ensures that "all persons similarly situated should be treated

2   alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985).  "The Supreme Court

3   has recognized that 'an equal protection claim can in some circumstances be sustained even if the

4   plaintiff has not alleged class-based discrimination, but instead claims that she has been irrationally

5   singled out as a so-called 'class of one.'" *Gerhart v. Lake County, Montana*, 637 F.3d 1013, 1021

6   (9th Cir. 20100 ) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008)).  To prevail

7   on a class of one claim, plaintiffs must show that "they have been '[1] intentionally [2] treated

8   differently from others similarly situated and that [3] there is no rational basis for the difference in

9   treatment.'" *SmileDirectClub, LLC v. Tippins*, 29 F.4th 513 (9th Cir. 2022) (quoting *Village of

10  Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)).  "[A] class-of-one plaintiff must be

11  similarly situated to the proposed comparator in all material respects." *SmileDirectClub*, 29 F.4th

12  at ___, 2022 WL 804146, at *8.

13          The County contends that plaintiffs cannot meet their burden of showing the elements of

14  their class of one claim because plaintiffs have no evidence of similarly situated permit applicants

15  who met the (B)(3) requirements who were treated differently by the County, nor can plaintiffs show

16  that the County lacked a rational basis to deny plaintiffs' application.[14]  As an initial matter, the

17  County contends that plaintiffs did not meet the (B)(3) requirements because they did not provide

18  proof of prior and current cultivation at the "origin" site.  It is undisputed that plaintiffs did not do

19  so.  Instead, plaintiffs initially provided proof of prior cultivation at a non-qualifying coastal location

20  in Manchester, and then later submitted proof of prior cultivation at a location in Willits; it is

21  undisputed that plaintiffs had ceased cultivating cannabis at both locations at the time they applied

22  for the permit.  Graham Decl., Ex. CC (Borges' and Gurr's Responses to Requests for Admission

23  Nos. 44 & 47).  Further, it is undisputed that plaintiffs were not cultivating cannabis at the Ukiah

24  property prior to January 2016.  *Id.* (Borges' and Gurr's Responses to Requests for Admission Nos.

25  43 & 46 admitting that plaintiffs were not cultivating cannabis at Ukiah property prior to January 1,

26

27          [14]  The County raises numerous other arguments regarding plaintiffs' permit denial claim,
    including that plaintiffs do not have a federally protected property interest in a cannabis cultivation

28  permit.  The Court finds it unnecessary to address those arguments.

1    2016).  Plaintiffs do not dispute that they were seeking a permit for a new cannabis cultivation site

2    in Ukiah.

3         Plaintiffs argue that they did not need to satisfy the (B)(1) requirement of current cultivation

4    because they were applying for a (B)(3) permit.  This is a misreading of the ordinance.  Section

5    10A.17.080 (B)(3), "Relocation," provides that "[p]ersons *able to show proof of prior cultivation*

6    *pursuant to paragraph (B)(1)* above may apply for a Permit not on the site previously cultivated

7    (the 'origin site') but on a different legal parcel (the 'destination site') . . . ." (emphasis added).

8    Section (B)(1) requires "evidence that [the applicants] were cultivating cannabis on the cultivation

9    site prior to January 1, 2016, . . . [and] Evidence shall include . . . (a) Photographs of any cultivation

10   activities that existed on the legal parcel prior to January 1, 2016 . . . [and] (b) *Photographs of any*

11   *cultivation activities that currently exist on the legal parcel* . . . ." (emphasis added); *see also* Def's

12   Request for Judicial Notice, Ex. D (Cannabis Cultivation Program FAQs, found at

13   https://www.mendocinocounty.org/government/cannabis-cultivation/cannabis-cultivation-faq,

14   printed 1/19/22, stating *inter alia* that "When establishing 'proof of prior cultivation' the cultivation

15   activities before and after 1/1/16 must be the same legal parcel (See MCC §

16   10A.17.080(B)(1)(a)&(b)).  This legal parcel will become the origin site for purposes of relocation.

17   Only after establishing prior cultivation at the origin site can a cultivator proceed with the location

18   process for a permit on a destination site under MCC §10A.17.080(B)(3)).[15]

19        As such, in order to prevail on their class of one claim with regard to the permit denial,

20   plaintiffs must show that there are other applicants who did not submit evidence of current

21   cultivation at an origin site but who were granted (B)(3) relocation permits.  Plaintiffs do not have

22   any such evidence and thus have failed to raise a triable issue of fact on this claim.  The record

23   reflects that in discovery plaintiffs initially admitted that they did not have any information about

24   other permit applicants and plaintiffs asked the County to provide this information:

26   ///

28   [15]  The County represents that these FAQs have remained the same during the relevant time period, and plaintiffs do not dispute that assertion.

15

[Defendant's] SPECIAL INTERROGATORY NO. 2:

Identify any and all Mendocino County cannabis cultivation permit applicants whose permits were granted, who failed to provide proof of prior cultivation on the same site as the current cultivation site during Phase 1, and/or who failed to provide proof of prior cultivation on the same site as the current cultivation site during Phase 1, but still received a permit.

[Borges'] RESPONSE TO SPECIAL INTERROGATORY NO. 2:

Plaintiff does not have this information, however, that information is readily available to the County. The Plaintiff requests that the County share this information with her.

[Defendant's] SPECIAL INTERROGATORY NO. 3:

Identify all Mendocino County cannabis cultivation permit applicants who did not meet the prior cultivation site condition explained in Mendocino County Code Section 10A. 17.080(B)(l).

[Borges'] RESPONSE TO SPECIAL INTERROGATORY NO. 3:

Plaintiff does not have this information, however, that information is readily available to the County. The Plaintiff requests that the County share this information with her.

Graham Decl., Ex. CC.[16]

After the Court directed plaintiffs to supplement their discovery responses, Dkt. No. 93, plaintiffs provided a revised response identifying six applicants who were allegedly granted relocation permits without proof of current cultivation at an origin site. *Id.* at Ex. EE. However, the evidence regarding these six applicants shows that none of these applicants has been granted a final permit, and that as of March 25, 2022, all six applications were still "under review." *See* Def's Request for Judicial Notice, Ex. O-T (six applications), U (list showing status of the six applications); Supp. Nevedal Decl. ¶ 4 (stating "Plaintiffs allege there are six applicants who are similarly situated to Plaintiffs whose applications were not denied. . . . These six applications remain under review, in part due to the County's backlog of applications, and partly due to delays in application review caused by the applicants themselves.") (Dkt. No. 110-6).

More importantly, the evidence shows that none of the six applicants are similarly situated to plaintiffs in all material respects. Kristin Nevedal, the Director of the Cannabis Department for

---

[16] Defendant's motion and reply papers state that plaintiffs did not conduct any discovery on their class of one claim, and plaintiffs' opposition does not challenge that statement.

1    the County, has filed a declaration stating that five of the applicants (Harris, Parks, Dunn, Foltz and

2    McMurray) have provided proof of prior and current cultivation at the origin sites, and for one of

3    the applicants (Phillips), "[t]he County has no documentation of Phillips' Proof of Prior Cultivation

4    Worksheet whereupon he indicated that he intended to apply for relocation.  Due to circumstances,

5    Phillips later indicated a need to switch to a relocation permit, but as of the filing of this document,

6    Phillips' application is still under review."    Nevedal Decl. ¶¶ 7-13 (Dkt. No. 98).

7           Thus, plaintiffs have not submitted any evidence showing that the County has granted

8    anyone a (B)(3) permit where the applicant did not satisfy the (B)(1) requirement of proof of prior

9    and current cultivation at the origin site.  Plaintiffs' opposition asserts that "the County is unable to

10    identify any other (B)(3) applicant denied a permit for the reasons given to the Plaintiffs."  Opp'n

11    at 9-10.  Plaintiffs misunderstand the law on a class of one Equal Protection claim. It is not the

12    County's burden to show that other applicants have been denied (B)(3) permits for failure to provide

13    proof of prior and current cultivation at the origin site.[17]  Instead, it is plaintiffs' burden to show that

14    there are similarly situated applicants who were treated differently.  "An equal protection claim will

15    not lie by 'conflating all persons not injured into a preferred class receiving better treatment' than

16    the plaintiff." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir.2005) (quoting Joyce v.

17    Mavromatis, 783 F.2d 56, 57 (6th Cir.1986));  *see, e.g.*, *Warkentine v. Soria*, 152 F. Supp. 3d 1269,

18    1294-95 (E.D. Cal. 2016) (granting summary judgment in favor of city on property owners' class-

19    of-one claim because plaintiff property owners had not met burden to show they were similarly

20    situated in all material respects to comparators); *see also Bruner v. Baker*, 506 F.3d 1021, 1029

21    (10th Cir. 2007) (affirming summary judgment because "Bruner provided no evidence of similarly

22    situated individuals being treated differently"); *see also Cordi-Allen v. Conlon*, 494 F.3d 245, 250-

23    51 (1st Cir. 2007) ("[T]he case law makes clear that the burdens of production and persuasion must

24    be shouldered by the party asserting the equal protection violation. Thus, '[p]laintiffs claiming an

---

[17] Indeed, if the County submitted evidence showing that other applicants have been denied (B)(3) permits because they did not submit proof of prior and current cultivation at the origin site, that would only arguably demonstrate that the County has treated similarly situated individuals in the same manner.

equal protection violation must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently."); *cf. Gerhart*, 637 F.3d at 1022 (finding the plaintiff had submitted sufficient evidence to defeat summary judgment because "Gerhart's uncontradicted testimony was that at least ten other property owners on his block have built approaches to Juniper Shores Lane of which the Commissioners are aware, but for which the Commissioners have not required approach permits. This evidence strongly suggests that Gerhart was singled out when he was told to apply for an approach permit.").[18]

Moreover, even if plaintiffs could argue that any of the six individuals discussed in the Nevedal declaration are similarly situated to plaintiffs, plaintiffs do not have any evidence showing that the County did not have a rational basis for any differential treatment. *See id.*. at 1023. ("the rational basis prong of a 'class of one' claim turns on whether there is a rational basis for the *distinction*, rather than the underlying government action.") (emphasis in original). As discussed *supra*, Phase One was intended to bring existing growers into the legal market before permitting new entrants into the market. It is undisputed that when plaintiffs applied for the (B)(3) relocation permit, they were not currently cultivating cannabis on the Willits "origin" site, had not cultivated cannabis at the Willits location since the 1980s, and they no longer owned or controlled the Willits site and thus could not restore the origin site. The County has a rational basis for treating plaintiffs differently because five of the six applicants have submitted proof of prior and current cultivation at the origin site, whereas plaintiffs did not. The Court's review of Mr. Phillips' application (which, like the others, is still under review), indicates that Mr. Phillips submitted proof of prior cultivation of an origin site from 2013 and proof of remediation of an origin site from 2018, initially indicated he was not applying for relocation permit, that his application was placed on hold for a period of

---

[18] Plaintiffs' opposition also asserts, citing Mr. Gurr's declaration, that "[n]one of the other [six] relocation/(B)(3) applicants had both prior and existing cultivation at the 'origin' site. Rather, they relocated from an origin site, as did the Plaintiffs, to a new site." Opp'n at 10. However, plaintiffs do not have any evidence in support of this assertion, and the Court agrees with defendant's objection to Mr. Gurr's statement as conclusory and lacking foundation. The evidence submitted by the County shows that five of the six applicants have submitted evidence of prior and existing cultivation at the "origin" site and are seeking to relocate to a new site. The sixth individual, Phillips, submitted evidence of prior cultivation as well as remediation at the "origin" site, and it appears at one point indicated he was not applying for a relocation permit and then changed the application.

time, and at some point Mr. Phillips indicated that he was applying for a relocation permit.  *See generally* Def's Request for Judicial Notice, Ex. S.  There is a rational basis for differential treatment because plaintiffs' application did not comply with the (B)(1) proof of prior cultivation requirement, while the Phillips application contains different forms of evidence and is still under review.  *See Thornton*, 425 F.3d at 1168 ("Evidence of different treatment of unlike groups does not support an equal protection claim.").

## II.    Rezoning of Boonville Road/Woodyglen District

Borges and Gurr also claim that the December 4, 2018 amendment of the ordinance establishing the Boonville Road/Woodyglen district as a cannabis prohibition district specifically targeted them as the only qualified applicants in an agricultural area prohibited from cultivating cannabis based on change in zoning.  Defendant contends that this claim fails because plaintiffs do not have any evidence that similarly situated permit applicants were treated differently with regard to zoning or that the County's actions lacked a rational basis.

The Court agrees with the County.  As an initial matter and as discussed *supra*, plaintiffs were not qualified applicants because they did not meet the requirements for a (B)(3) permit, thus undercutting one of the premises of their Equal Protection claim.  In addition, plaintiffs have not submitted any evidence showing that similarly situated individuals were treated differently, and they have admitted that they have no evidence of other applicants in either prohibition district who were granted a permit.  Graham Decl., Ex. DD (Response to Special Interrogatory No. 4) (Dkt. No. 97-2).  Plaintiffs do not dispute that the designation of the Booneville Road/Woodyglen and the Deerwood cannabis prohibition districts affected all persons within those districts.

Plaintiffs' opposition asserts that "[t]he County has not identified any other resident of Mendocino County, similarly situated to the Plaintiffs and zoned AG40, who was adversely impacted by the 'Opt-Out' zone created by the Board of Supervisors in 2018." Opp'n at 10.  Again, it is not the County's burden to disprove plaintiffs' claim; it is plaintiffs' burden to come forward with evidence to show that they were singled out and that similarly situated individuals were treated differently without any rational basis for the difference in treatment.

1    Plaintiffs also refer to two pieces of evidence in support of their claim that they were singled

2  out. First, plaintiffs cite Mr. Gurr's declaration for his statement, "To my knowledge Ann Marie

3  Borges and I were the only qualified persons in an agricultural zone in the County adversely affected

4  by the 'opt-out' amendment to the zoning plan." Gurr Decl. ¶ 14. The County correctly objects that

5  this statement is conclusory and does not prove that similarly situated individuals were treated

6  differently. Further, and at the risk of repetition, the undisputed evidence shows that plaintiffs were

7  not qualified for the (B)(3) permit. Second, plaintiffs cite the deposition testimony of Supervisor

8  John McCowen for the assertion that plaintiffs were the only individuals who were in the permit

9  process and impacted by the opt-out ordinance. However, Mr. McCowen's deposition testimony

10  does not show that individuals similarly situated to plaintiffs were treated differently. The relevant

11  portion of Mr. McCowen's deposition is as follows:

12    Q: All right. And to your knowledge, were there people in the permit process who
     lived in the Deerwood District or neighborhood who were impacted by the opt-out
13     ordinance?

14    A: I don't know.

15    Q: Would it be fair to say my clients are the only people you are aware of who were
     impacted – at least publicly came out and were in permit process and were impacted
16     by the opt-out ordinance?

17    A: Yes. They are the only ones I'm aware of.

18  *See* Scott Decl., Ex. C at 161. Thus, Mr. McCowen only testified he did not know whether there

19  were permit applicants in the Deerwood district who were impacted by the rezoning, and that

20  plaintiffs were the only people of whom he was aware who "publicly came out and were in permit

21  process and were impacted by the opt-out ordinance."

22    In addition, plaintiffs do not have any evidence suggesting that the County did not have a

23  rational basis for designating the Booneville Road/Woodyglen district as a cannabis prohibition

24  district as opposed to other districts. "[I]t is well settled that a municipality may divide land into

25  districts and prescribe regulations governing the uses permitted therein, and that zoning ordinances,

26  when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of police

27  power." *Hernandez v. City of Hanford*, 41 Cal. 4th 279, 296 (2007); *see also Pearl Inv. Co. v. San*

28  *Francisco*, 774 F.2d 1460, 1463 (9th Cir. 1985). ("[L]and-use planning questions touch a sensitive

United States District Court
Northern District of California

area of social policy into which the federal courts should not lightly intrude.").  The evidence in the record shows that the County engaged in a lengthy process involving a consultant and considerable public input and participation, and that the Planning Commission unanimously recommended, and the Board of Supervisors approved, the adoption of the ordinance and the establishment of four cannabis accommodation districts and two cannabis prohibition districts.  The designation of the Booneville Road/Woodyglen district as a cannabis prohibition district had significant support of the residents in that district (as did the designations of the other districts).  The residents who supported the designation of the prohibition zones expressed concerns about water demands, traffic, and the residential character of the neighborhoods—all legitimate land use concerns.  *See Nelson v. City of Selma*, 881 F.2d 836, 839 (9th Cir. 1989)  ("The preservation of the character and integrity of single-family neighborhoods, prevention of undue concentration of population, prevention of traffic congestion and maintenance of property values are all legitimate purposes of planning and zoning. . . . The opposition of neighbors to a development project is also a legitimate factor in legislative decisionmaking."); *cf. City of Riverside v. Inland Empire Patients Health & Wellness Ctr.*, 56 Cal. 4th 729, 753-54 (2013) (recognizing "the broad authority traditionally possessed by local jurisdictions to regulate zoning and land use planning within their borders" and stating that nothing in state law "requires local zoning and licensing laws to accommodate the cooperative or collective cultivation and distribution of medical marijuana"); *Lo v., County of Siskiyou*, No. 2:21-cv-00999-KJM-DMC, __ F. Supp. 3d __, 2021 WL 4026527, at *12 (E.D. Cal. Sept. 3, 2021) (finding county ordinance regulating and prohibiting use of groundwater for cannabis cultivation "rationally related to the County's legitimate interest in preserving scarce groundwater resources in a drought.").

///

///

**CONCLUSION**

For the foregoing reasons, the Court concludes that plaintiffs have failed to raise a triable issue of fact as to their Equal Protection claim, and accordingly GRANTS defendant's motion for summary judgment.


**IT IS SO ORDERED**.


Dated: April 18, 2022

_____

SUSAN ILLSTON
United States District Judge